UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

ROBERT L. TATUM,

Plaintiff, CASE NO: 11-CV-1131

v.

DAVID CLARKE, JR., DI KEVIN NYKLWICZ,
CAPT. PETER JASKULSKI, CAPT. MELISSA ELLIOT,
LT. ABI DOUGLAS, LT. TRICIA CARLSAN,
SGT. FATRINA HALE, SGT. SARAH WRONSKI,
SGT. THOMAS TRETTIN, SGT. THOMAS LIEBENTHAL,
SGT. GARY COLEMAN, SGT. BRET MEYERS,
DET. TIMOTHY LORCH, DET. MITCHELL GOTTSCHALK,
CO PATRICK DIGGINS-DAVIS, CO DENNIS McKNIGHT,
CO JUSTIN GEORGESON, CO SEAN HENDERSON,
CO MICHAEL LEEMAN, CO DESHAWN McKINLEY,
CO CHARLES HOLT, CO EDWARD HORZEWSKI,
CO JAMES KOSCIELAK, CO SHERI SHMITZ,
RN SUPR. TINA WATS, RN CHRIS LUBUS,
CO MATT LEETE, PSW KIRK LAUSTERER, SGT. "JOHN"
NOVATHY, CO "JOHN" WOODS, CO "JOHN" D. SMITH,
CO "JOHN" D. KRAKLOW, UNKNOWN RNs,
and CO "JANE" LUNA, in their individual and official capacities,

Defendants.

---

**AFFIDAVIT OF KEVIN NYKLEWICZ**

---

STATE OF WISCONSIN )
) SS
MILWAUKEE COUNTY )

I, Kevin Nyklewicz, being first duly sworn on oath, deposes and states as follows:

1. I make this affidavit on personal knowledge and in support of Defendants' Motion for Summary Judgment.
2. I was employed by Milwaukee County as a Deputy Inspector in the Milwaukee County Sheriff's Office in 2010 and 2011. I was assigned to and am currently assigned to the Milwaukee County Correctional Facility-Central (hereinafter the

"Jail). I was in charge of the Jail in 2010 and 2011. My duties at the Jail consisted of the operation and administration of the Jail. I am in charge of the day-to-day operations of the Jail.

3. Sheriff David A. Clarke, Jr. ( "Sheriff Clarke") was the Milwaukee County Sheriff at all times referenced in the Complaint. Sheriff Clarke is not involved in the day-to-day activities of the Jail.
4. Defendant Peter Jaskulski worked for Milwaukee County as a Captain with the Milwaukee County Sheriff's Office ("MCSO") at all times relevant, but is no longer employed by Milwaukee County.
5. Defendant Melissa Elliot worked for Milwaukee County as a Captain with the MCSO at all times relevant, but is no longer employed by Milwaukee County.
6. Defendant Abie Douglas worked for Milwaukee County as a Lieutenant with the MCSO at all times relevant, but is no longer employed by Milwaukee County.
7. Defendant Tricia Carlson worked for Milwaukee County as a Lieutenant with the MCSO at all times relevant.
8. Defendant Fatrena Hale worked for Milwaukee County as a Sergeant with the MCSO at all times relevant.
9. Defendant Sarah Wronski worked for Milwaukee County as a Sergeant with the MCSO at all times relevant.
10. Defendant Thomas Trettin worked for Milwaukee County as a Sergeant with the MCSO at all times relevant.
11. Defendant Thomas Liebenthal worked for Milwaukee County as a Sergeant with the MCSO at all times relevant.

12. Defendant Gary Coleman worked for Milwaukee County as a Sergeant with the MCSO at all times relevant.

13. Defendant Bret Myers worked for Milwaukee County as a Sergeant with the MCSO at all times relevant.

14. Defendant "John" Novotny worked for Milwaukee County as a Sergeant with the MCSO at all times relevant.

15. Defendant Timothy Lorch worked for Milwaukee County as a Detective with the MCSO at all times relevant.

16. Defendant Mitchell Gottschalk worked for Milwaukee County as a Detective with the MCSO at all times relevant.

17. Defendant Patrick Diggins-Davis worked for Milwaukee County as a Corrections Officer with the MCSO at all times relevant, but is no longer employed by Milwaukee County.

18. Defendant Dennis McKnight worked for Milwaukee County as a Corrections Officer with the MCSO at all times relevant.

19. Defendant Justin Georgeson worked for Milwaukee County as a Corrections Officer with the MCSO at all times relevant, but is no longer employed by Milwaukee County.

20. Defendant Charles Holt worked for Milwaukee County as a Corrections Officer with the MCSO at all times relevant.

21. Defendant Edward Horzewski worked for Milwaukee County as a Corrections Officer with the MCSO at all times relevant.

22. Defendant James Koscielak worked for Milwaukee County as a Corrections Officer with the MCSO at all times relevant.

23. Defendant Matthew Leete worked for Milwaukee County as a Corrections Officer with the MCSO at all times relevant, but is no longer an employee of Milwaukee County.

24. Defendant "John" Woods worked for Milwaukee County as a Corrections Officer with the MCSO at all times relevant.

25. Defendant "Jane" Luna worked for Milwaukee County as a Corrections Officer with the MCSO at all times relevant.

26. Defendant Sean Henderson worked for Milwaukee County as a Corrections Officer with the MCSO at all times relevant.

27. Defendant Michael Leeman worked for Milwaukee County as a Corrections Officer with the MCSO at all times relevant, but is no longer an employee of Milwaukee County.

28. Defendant DeShawn McKinley worked for Milwaukee County as a Corrections Officer with the MCSO at all times relevant.

29. Defendant "John" D. Smith worked for Milwaukee County as a Corrections Officer with the MCSO at all times relevant.

30. Defendant Cheri Schmitz worked for Milwaukee County as a Corrections Officer with the MCSO at all times relevant.

31. Defendant Tina Watts worked for Milwaukee County as a Registered Nurse Supervisor with the MCSO at all times relevant, but is no longer employed by Milwaukee County.

32. Defendant Chris Lubus worked for Milwaukee County as a Registered Nurse with the MCSO at all times relevant.

33. Defendant Kirk Lausterer worked for Milwaukee County as a Psychiatric Social Worker with the MCSO at all times relevant.

34. Defendant CERT Team LR Tim "Doe"/Calvin Smith worked for Milwaukee County as a Corrections Officer with the MCSO at all times relevant.

35. The Department of Corrections ("DOC") regulations that apply to the Jail regarding disciplines are contained in Wis. Adm. Code DOC 350.15. Attached hereto as Exhibit A is a true and correct copy of the Wisconsin Administrative Code, Chapter DOC 350.

36. Wis. Adm. Code DOC 350.15(2)(a) explains the parameters for a minor discipline, which is defined as discipline of twenty-four (24) hours or less. The Jail refers to these as Level I disciplines. See Exhibit A, attached hereto.

37. The remaining infractions can constitute Level II through Level V infractions, and have certain penalties. Enhanced penalties can apply for repeat violations. Attached hereto as Exhibit B is a true and correct copy of the MCSO's Inmate Handbook.

38. Robert Tatum ("Tatum") was incarcerated at the CCF-C from June 4, 2010 through June 15, 2011 while he was awaiting trial on two (2) counts of 1st Degree Intentional Homicide for killing both his roommate and his landlord on May 28, 2010.

39. Although I was not involved in the disciplinary documents, decisions or disciplinary hearings, a review of Jail records under my control indicate that during Tatum's incarceration at the Jail, he incurred approximately eighty-five (85) instances of rules violations. See Exhibits C, D, F through S, attached hereto.

40. It is the responsibility of the shift deputy or other officer working the pod to submit disciplinary reports and a supervisor conducts the disciplinary hearings.

41. Forty-seven (47) of Tatum's infractions were "in-pod disciplines" wherein Tatum was disciplined with less than twenty-four (24) hours locked in his cell and did not require a discipline hearing. Attached hereto as Exhibit C is a true and correct copy of the Jail's DI41-In Pod Disciplinary Incident Report. This report lists each date Tatum received an in-pod discipline, the officer who witnessed the rule violation, and the corresponding rule that was violated. Attached hereto as Exhibit D is a true and correct copy of the Jail's DI49-In Pod Disciplinary Incident Report. This report lists the same information as noted in the DI41 screen, but also provides the exact time and specific number of hours Tatum was locked in his cell.

42. The remaining thirty-eight (38) infractions are documented in ten (10) formal disciplines involving discipline hearings.

43. Tatum was booked into the Jail on June 4, 2010 and housed in pod 6B. Attached hereto as Exhibit E is a true and correct copy of Tatum's LM11-Housing Assignment History while incarcerated at the Jail. Page 4 provides his initial housing assignment.

44. On June 6, 2010, Tatum was moved to pod 5D. See page 3 of Exhibit E, attached hereto.

45. On June 22, 2010, Tatum was written up for committing three (3) rules violations: (1) disobeying verbal or written orders from sworn staff; (2) committing any act that disrupts the orderly operation of the Jail; and (3) refusing an order to lock in. Attached hereto as Exhibit F is a true and correct copy of the June 22, 2010 Rules Violation Report, the Findings, and summary of the June 22, 2010 violations.

46. Due to these violations, Tatum was moved to pod 4D, the disciplinary pod, on June 22, 2010. See page 3 of Exhibit E, attached hereto.

47. Two (2) of the three (3) violations occurring on June 22, 2010 were sustained and all three (3) were Level III violations. See the Findings located in Exhibit F, attached hereto.

48. Tatum was given a total of six (6) days in disciplinary confinement pursuant to the Disciplinary Categories and Ranges contained in the Inmate Handbook. See the Findings located in Exhibit E and the Inmate Handbook attached as Exhibit B.

49. Inmates are moved to a disciplinary pod when they violate prison rules and/or when the inmates are threats to themselves, staff, or the general security of the Jail.

50. On June 29, 2010, Tatum was moved out of 4D and back to the general population pod, pod 5B. See page 3 of Exhibit E, attached hereto.

51. From June 29, 2010 through September 22, 2010, Tatum incurred fifteen (15) "in-pod" rules infractions. See the Jail's DI41 and DI49-In Pod Disciplinary Incident reports attached hereto as Exhibits C and D, respectively.

52. On September 22, 2010, Tatum was written up for committing the following rules violations: (1) disobeying verbal or written orders from sworn staff; (2) coming any act that disrupts the orderly operation of the Jail; (3) refusing an order to lock in, and (4) coming any act that requires use of force. Attached hereto as Exhibit G is a true and correct copy of the September 22, 2010 Rules Violation Report, Findings, Use of Force Summary, Major Incident Report and corresponding Incident Reports.

53. On October 11, 2010, Tatum was moved to pod 4B. See page 3 of Exhibit E, attached hereto.

54. Tatum stayed in pod 4B until October 18, 2010, when he was moved to pod 5B. See page 3 of Exhibit E, attached hereto.

55. From September 22, 2010 until October 21, 2010, Tatum incurred three (3) additional in-pod disciplines for rules violations. See the Jail's DI41 and DI49-In Pod Disciplinary Incident Reports attached hereto as Exhibits C and D, respectively.

56. Tatum was moved to pod the disciplinary pod, pod 4D, on October 21, 2010 for committing the following rules violations: (1) use of obscene language to jail staff; (2) committing any act that disrupts the orderly operation of the jail; (3) disobeying verbal or written orders from staff; (4) committing any act that requires use of force; (5) participation in a disturbance requiring a C.E.R.T. team; (6) committing any act, which necessitates a security search; (7) threat to another person; (8) committing any act that disrupts the orderly operation of the jail; and (9) making sexual threats, proposals or gestures. Attached hereto as Exhibit H is a true and correct copy of the October 21, 2010 Rules Violation Report, the Findings, Use of Force Summary, Major Incident Report, corresponding Incident Reports, and corresponding Supplementary Reports.

57. On October 30, 2010, Tatum was written up for committing the following rules violations: (1) committing any act that disrupts the orderly operation of the Jail; (2) disobeying verbal or written orders from sworn staff; and (3) use of obscene language to jail staff. Attached hereto as Exhibit I is a true and correct copy of the October 30, 2010 Rules Violation Report, the Findings, and the corresponding Incident Report.

58. Tatum did not move cells in response to his October 30, 2010 Rules Violation as he was already housed in pod 4D, which is the disciplinary pod. See page 3 of Exhibit E, attached hereto.

59. On November 4, 2010, Tatum moved out of discipline to pod 4B. See page 3 of Exhibit E, attached hereto.

60. On November 11, 2010, he moved to a different cell within the same pod, 4B. See page 3 of Exhibit E, attached hereto.

61. From October 22, 2010 until November 27, 2010, Tatum incurred ten (10) additional in pod disciplines for rules violations. See the Jail's DI41 and DI49-In Pod Disciplinary Incident Reports attached hereto as Exhibits C and D, respectively.

62. On November 27, 2010, Tatum was moved to the disciplinary pod, pod 4D, for committing the following rules violations: (1) committing any act that disrupts the orderly operation of the jail; (2) disobeying verbal or written orders from sworn staff; and (3) use of obscene language to jail staff. Attached hereto as Exhibit J is a true and correct copy of the November 27, 2010 Rules Violation Report and corresponding Incident Report.

63. On December 4, 2010, he was transferred to 4B, but was still treated as a discipline status. See page 2 of Exhibit E, attached hereto.

64. Pod 4B can be used for discipline overflow in the Jail as it does not have enough room in 4D and for purposes of transitioning inmates back to general population.

65. On January 19, 2011, Tatum was moved to a new cell within pod 4B, still on discipline status. Later that day he was moved to pod 4D, then moved back pod 4B in his newly assigned cell he occupied earlier that day, still on discipline. See page 2 of Exhibit E, attached hereto.

66. On January 20, 2011, Tatum was moved to the disciplinary pod, 4D for (1) refusing an order to lock in; (2) using obscene language to jail staff; (3) any act that disrupts the orderly operation of the jail; (4) failure to comply with classification procedures; and (5) disobeying written or verbal orders from staff. Attached hereto as Exhibit K

is a true and correct copy of the January 20, 2011 Rules Violation Report, the Findings, and corresponding summary of the incident.

67. On January 27, 2011, Tatum was written up for (1) committing any act that necessitates a security search; (2) committing any act that disrupts the orderly operation of the jail; (3) disobeying verbal or written orders from sworn staff; and (4) defacing county property. Attached hereto as Exhibit L is a true and correct copy of the January 27, 2011 Rules Violation Report, the Findings, and the corresponding Incident Report.

68. On February 1, 2011, Tatum was transferred to Mendota Mental Health Institute ("Mendota") for an evaluation of his competency. See page 2 of Exhibit E, attached hereto.

69. On February 17, 2011, Tatum returned from Mendota and returned to the discipline pod because of his behavior patterns: Tatum had twenty (20) formal discipline charges sustained and forty-one (41) in-pod disciplines; therefore, he was considered a threat to the security of the Jail. See page 3 of Exhibit E, attached hereto.

70. On February 18, 2011, Tatum was sent to special needs on the second floor of the Jail and placed in a restraint bed for committing the following acts: (1) flooding causing leakage to cells, walls or floors; (2) intentionally damaging jail security or safety of property; (3) tampering with any permanent building fixture; (4) committing any act that disrupts the orderly operation of the jail; (5) disobeying verbal or written orders from officers; and (6) defacing county property while housed in 4D. Attached hereto as Exhibit M is a true and correct copy of the February 18, 2011 Rules Violation Report, the Findings, and the corresponding Incident Report.

71. Tatum's placement on the restraint bed was due to his out of control behavior in tampering with the sprinkler.

72. Once Tatum was under control, he was returned to the disciplinary pod, pod 4D, on February 18, 2011. See page pages 1 and 2 of Exhibit E, attached hereto.

73. During his disciplinary hearing of the February 18, 2011 rules violations, Captain Elliott listened to Tatum's side of the story in sustaining the charges against him. See the Findings in Exhibit M, attached hereto.

74. On March 11, 2011, Tatum was written up for (1) committing any act which necessitates a security search by staff; (2) committing any act that disrupts the orderly operation of the jail; and (3) disobeying verbal or written orders from officers. Attached hereto as Exhibit N is a true and correct copy of the March 11, 2011 Rules Violation Report, the Findings, and the corresponding Incident Report.

75. Since Tatum was already in disciplinary housing, he remained in his assigned cell. See page 1 of Exhibit E, attached hereto.

76. Tatum also met with a psychiatric social worker ("PSW") because he threatened to kill himself if he could not speak with one. The PSW met with Tatum and placed him on suicide watch on March 11, 2011. (See page 2 of the Incident Report in Exhibit N, attached hereto.

77. On March 21, 2011, Tatum remained in pod 4D, but was put on maximum custody status due to his numerous rules violations and behavior status. See page 1 of Exhibit E, attached hereto.

78. Inmates are placed on maximum custody status when they are deemed a threat to themselves, staff, or to the general security of the Jail.

79. Tatum was an active threat to himself, staff, and other inmates at that time.

80. While on maximum custody status, an inmate's status is reviewed every thirty (30) days.

81. On March 22, 2011, while housed in pod 4D, Tatum was written up for (1) use of obscene language to jail staff; (2) disobeying verbal or written orders from staff; (3) committing any act that disrupts the orderly operation of the jail; and (4) refusing an order to lock in. Attached hereto as Exhibit O is a true and correct copy of the March 22, 2011 Rules Violation Report, the Findings, and the corresponding Incident Report.

82. The disciplinary hearing for the March 22, 2011 incident took place on March 28, 2011. See the Findings in Exhibit O, attached hereto.

83. During the March 28, 2011 disciplinary hearing, Lieutenant Carlson reviewed all the relevant reports and sustained all violations. See the Findings in Exhibit O, attached hereto.

84. On March 30, 2011, while still housed in 4D, Tatum committed the following rules violations: (1) committing any act which necessitates a security search; (2) violation of telephone or mail regulations; (3) committing any act that disrupts the orderly operation of the jail; (4) disobeying verbal or written orders from sworn staff; (5) defacing county property; and (6) use of obscene language to jail staff. Attached hereto as Exhibit P is a true and correct copy of March 30, 2011 Rules Violation Report, the Findings, and the corresponding Incident Report.

85. The rules violation report of this incident indicates that during a search of Tatum's cell, several small pieces of elastic that were torn from his jail uniform were found tied into a knot, approximately 24 inches of elastic was found in an envelope, and

Tatum had covered his vent. See page 2 of the Incident Report in Exhibit P, attached hereto

86. From November 27, 2010 through March 30, 2011, Tatum incurred seventeen (17) additional instances of in-pod disciplines. See the Jail's DI41 and DI49-In Pod Disciplinary Incident Reports attached hereto as Exhibits C and D, respectively.

87. On April 7, 2011, Tatum was moved back to the special needs pod and placed on suicide watch. See page 1 of Exhibit E, attached hereto.

88. Inmates are placed in a special needs pod when an inmate requires special monitoring because they display behavior that indicates they should not be housed in general population.

89. On April 19, 2011, while still housed in special needs, Tatum committed the following rules violations: (1) committing an act that results in a use of force; (2) failure to comply with classification procedures; (3) violation of phone or mail regulations; (4) disrupting orderly operation of the jail; and (5) disobeying verbal or written orders from staff. Attached hereto as Exhibit Q is a true and correct copy of the April 19, 2011 Rules Violation Report, the Findings, the corresponding Incident Report, and Supplementary Reports.

90. Tatum remained in special needs, but was placed on maximum custody status again due to his previous behavior issues and rules infractions.

91. On April 20, 2011, Tatum changed cells within the special needs pod. See page 1 of Exhibit E, attached hereto.

92. Tatum remained in special needs so he could be better monitored by staff because of his past history and for the security of the Jail.

93. On May 4, 2011, Tatum committed the following rules violations: (1) committing any act which necessitates a security search, (2) tampering with any permanent building fixture; (3) threat to another person; (4) committing any act that disrupts the orderly operation of the jail; (5) disobeying verbal or written orders from sworn staff; and (6) use of obscene language to jail staff. Attached hereto as Exhibit R is a true and correct copy of the May 4, 2011 (incorrectly dated as May 3, 2011) Rules Violation Report, the Major Incident Report, two corresponding Incident Reports, and the corresponding Supplementary Reports

94. On May 4, 2011, Tatum changed cells after the occurrence of the violations above, but was still on disciplinary status within the special needs pod. See page 1 of Exhibit E, attached hereto.

95. On May 5, 2011, Tatum moved sub pods within the special needs pod, but remained on disciplinary status. See page 1 of Exhibit E, attached hereto.

96. On May 24, 2011, Tatum's status was changed back to maximum custody status, but he remained in the special needs pod for the security of the Jail. See page 1 of Exhibit E, attached hereto.

97. On May 25, 2011, Tatum was moved to disciplinary status for (1) violation of telephone or mail regulations; (2) committing any act that disrupts the orderly operation of the jail; (3) disobeying verbal or written orders from staff; and (4) threats to another person. Attached hereto as Exhibit S is a true and correct copy of the May 25, 2011 Rules Violation and corresponding Incident Report.

98. Tatum remained on disciplinary status in the Jail from May 25, 2011 until he was sent to Columbia Correctional Facility ("CCI") on June 15, 2011 to serve his life sentence. See page 1 of Exhibit E, attached hereto.

99. On October 20, 2010, Tatum filed a grievance naming Corrections Officer Diggins-Davis and Sergeant Hale regarding the garment size he was provided during linen exchange. Attached hereto as Exhibit T is a true and correct copy of the October 20, 2010 Inmate Grievance Form, the Deputy's Grievance Response, and the Milwaukee County Sheriff's Office Grievance Response.

100. The undergarment issue was corrected in the system on October 20, 2010 and therefore the grievance was denied by Sergeant Hale on November 11, 2010. See pages 2 and 3 of Exhibit T, attached hereto.

101. All of Tatum's housing placements other than while in general population pods were in response to a threat to the security of the Jail or for disciplinary reasons.

Dated at Milwaukee, Wisconsin this 20th day of February, 2013.

/s/ Deputy Inspector Kevin Nyklewicz_________
DEPUTY INSPECTOR KEVIN NYKLEWICZ

Subscribed and sworn to before me
this 20th day of February, 2013.

/s/ Stephanie Mackey___________
Notary Public, State of Wisconsin
My commission expires: 10/30/2016.