# Chapter DOC 350

## JAILS


DOC 350.01 Purpose and authority.
DOC 350.02 Applicability.
DOC 350.03 Definitions.
DOC 350.04 Construction plans.
DOC 350.05 Physical environment for new or substantially remodeled jails.
DOC 350.06 Physical environment of existing jails.
DOC 350.07 Double celling.
DOC 350.08 Sanitation and hygiene.
DOC 350.09 Health care.
DOC 350.10 Fire safety.
DOC 350.11 Records and reporting.
DOC 350.12 Security.
DOC 350.13 Administrative confinement.
DOC 350.14 Use of force.
DOC 350.15 Discipline.
DOC 350.16 Exceptions.
DOC 350.17 Policy and procedure manual.
DOC 350.18 Inmate health screening and care.
DOC 350.19 Suicide prevention.
DOC 350.20 Control and administration of medications.
DOC 350.21 Communicable disease control.
DOC 350.22 Mail.
DOC 350.23 Visitation.
DOC 350.24 Religious programming.
DOC 350.25 Recreation.
DOC 350.26 Reading materials.
DOC 350.27 Canteen.


**Note:** Chapter HSS 350 was renumbered Chapter DOC 350 and revised under s. 13.93 (2m) (b) 1., 2., 6. and 7., Stats., Register, April, 1990, No. 412; Chapter DOC 350 was repealed and recreated by emergency rule effective March 19, 1990.

**DOC 350.01 Purpose and authority.** The purpose of this chapter is to establish minimum standards for the design and construction of jails, for maintaining sanitary and safe conditions in jails and the security of jails, and due process protections for inmates alleged to have violated jail conduct rules and subject to disciplinary proceedings and for the development of written inmate program standards for jails. The rules are promulgated under the authority of ss. 227.11 (2) (a), 301.03 (5), 301.36, 301.37, and 302.365, Stats.

**History:** Cr. Register, February, 1990, No. 410, eff. 3–1–90; am. Register, December, 1992, No. 444, eff. 1–1–93.

**DOC 350.02 Applicability.** This chapter applies to all jails established by counties under s. 302.30, Stats., all state–local shared correctional facilities established under s. 302.45, Stats., and all county houses of corrections established under s. 303.16, Stats.

**History:** Cr. Register, February, 1990, No. 410, eff. 3–1–90.

**DOC 350.03 Definitions.** In this chapter:

**(1)** "Administer" has the meaning given in s. 450.01 (1), Stats.

**(2)** "Cell" means a secure room designed and used as a sleeping room for one person confined in a jail, except that when the jail meets the conditions for double celling under s. DOC 350.07, "cell" means a secure room designed as a sleeping room and used for sleeping one or 2 persons confined in a jail.

**(3)** "Confinement" means placement in a cell of a person who has been arrested and is awaiting bail or bond posting, arraignment or another legal proceeding listed under ss. 938.208 and 938.209, Stats., for juveniles, or s. 302.31, Stats., for adults.

**(4)** "Contraband" means any item not allowed in a jail by the sheriff or by this chapter.

**(5)** "Dayroom" means an area in a jail which is designed and used as a leisure time area and which is readily accessible to a group of cells or a dormitory or is located within a dormitory.

**(6)** "Deliver" or "delivery" has the meaning given in s. 450.01 (5), Stats.

**(7)** "Department" means the Wisconsin department of corrections.

**(8)** "Detention strength" means strong enough to resist damage an inmate could inflict with tools or equipment that would normally be in his or her possession.

**(9)** "Division" means the division of probation and parole.

**(10)** "Dormitory" means a room used for sleeping purposes and designed for occupancy by 2 or more persons.

**(11)** "Health screening form" means the form or forms developed by a jail to obtain at admission information relating to each inmates' medical and dental condition, medical illnesses or disabilities, mental illnesses, developmental disabilities, alcohol or other drug abuse problems and suicide risk.

**(12)** "Holding room" means a secure room in the jail designed for holding more than one inmate of the same sex and security classification as determined by the segregation requirements specified in s. 302.36, Stats., for the purpose of processing admissions and releases.

**(13)** "Huber law inmate" means an inmate granted the privilege of leaving a jail under s. 303.08, Stats., or s. 973.09, Stats.

**(14)** "Jail" means a place of confinement operated by a sheriff for the purposes listed under s. 302.31, Stats. "Jail" includes a jail as defined under s. 302.30, Stats., a state–local shared correctional facility as defined under s. 302.45, Stats., and a county house of corrections as defined under ss. 303.16 and 303.17, Stats.

**(15)** "Multi–purpose room" means a room or an area in a jail that is designated for recreational activities, physical exercise or congregate assembly other than visiting.

**(16)** "Privileged mail" means any written materials between an inmate and an attorney, court, government or jail official.

**(17)** "Receiving cell" means a secure room designed and used as a sleeping room for one person confined in a jail to segregate the person for admission, release or disciplinary purposes.

**(18)** "Secretary" means the secretary of the department.

**(19)** "Secure perimeter of the jail" means the secure outer boundaries of a jail.

**(20)** "Security classification" means a grouping of inmates based on the level of supervision required, the nature of the offense for which the inmate was arrested or of which the inmate was convicted, or other criteria set by the sheriff.

**(21)** "Sheriff" means the person in charge of jail operations or a designee.

**(22)** "Special needs inmate" means any inmate who is identified or suspected of having a medical illness or disability, mental illness, a developmental disability or alcohol or other drug abuse problem or who is a suicide risk.

**History:** Cr. Register, February, 1990, No. 410, eff. 3–1–90; r. and recr. Register, November, 1990, No. 419, eff. 12–1–90; renum. (1) to (16) to be (2) to (5), (7) to (10), (12) to (15), (17), (19) to (21) and am. (9), cr. (1), (6), (11), (16), (18) and (22), Register, December, 1992, No. 444, eff. 1–1–93; corrections in (3) made under 13.93 (2m) (b) 7., Stats., Register, June, 1999, No. 522.

**DOC 350.04 Construction plans. (1)** Before design development begins, a county which intends to build or remodel a jail shall file a letter of intent with the division's regional detention facilities specialist.



Case 2:11-cv-01131-LA Filed 02/21/13 Page 1 of 8 Document 166-1

EXHIBIT
A

**(2)** Copies of original and updated drawings of the area within the secure perimeter of the jail shall be submitted to the division's regional detention facilities specialist at the same time the drawings are submitted to the county.

**(3)** All sites, plans and specifications for construction or remodeling of a jail shall comply with the state commercial building code, chs. SPS 361 to 365.

**(4)** Prior to approval by the department of safety and professional services under chs. SPS 361 to 365 and prior to publication of bid documents, 2 complete sets of plans and specifications shall be forwarded to the division for its review and approval.

**(5)** Upon approval by the division, one set of plans and specifications shall be marked to indicate approval by the division and returned to the county office or other office that submitted the plans. The remaining set shall be filed in the division. If the plans and specifications are not approved, both sets shall be returned to the sender.

**History:** Cr. Register, February, 1990, No. 410, eff. 3–1–90; corrections in (3) and (4) made under s. 13.93 (2m) (b) 6. and 7., Stats., Register, June, 1999, No. 522; corrections in (3) and (4) made under s. 13.93 (2m) (b) 7., Stats., Register December 2006 No. 612; **corrections in (3) and (4) made under s. 13.92 (4) (b) 6., 7., Stats., Register January 2012 No. 673.**

**DOC 350.05 Physical environment for new or substantially remodeled jails. (1)** APPLICABILITY. This section applies only to jails that are constructed or substantially remodeled on or after March 1, 1990.

**(2)** EQUIPMENT AND MATERIALS. The following equipment and materials used in a jail shall be of detention strength and manufactured, sold and installed by firms that specialize in jail and prison equipment or ordered from a firm that will follow the specifications for detention strength equipment in this chapter:

(a) Windows;

(b) Glazing;

(c) Security screens;

(d) Grills over vents and windows;

(e) Security doors;

(f) Security locks;

(g) Hinges;

(h) Food passes;

(i) Observation ports;

(j) "Contraband proof" sills;

(k) Speaking ports;

(L) Seats;

(m) Benches;

(n) Lights;

(o) Locking mechanism housings;

(p) Key cabinets;

(q) Walls;

(r) Window and door frames;

(s) Bunks;

(t) Tables;

(u) Toilets;

(v) Urinals;

(w) Wash basins;

(x) Drinking fountains;

(y) Showers;

(z) Desks;

(za) Clothing hooks;

(zb) Shelves;

(zc) Door pulls;

(zd) Screws;

(ze) Bolts;

(zf) Mirrors;

(zg) Floor drains; and

(zh) Ceilings.

**(3)** CELLS. (a) This subsection applies to all cells except receiving cells and holding rooms. Requirements for receiving cells are specified under sub. (5) and requirements for holding rooms are specified under sub. (7).

(b) Except if s. DOC 350.07 applies, each cell shall be designed and used for single occupancy only.

(c) Except if s. DOC 350.07 applies, each cell shall have a floor area of at least 54 square feet. The distance between the floor and ceiling may not be less than 8 feet and the distance between opposite walls may not be less than 6 feet.

(d) Each cell shall have:

1. A rigidly constructed metal bed with the frame bracketed to the wall or bolted to the floor or a bed built in masonry construction of a similar strength for each inmate;

2. A detention strength, metal, institution–type wash basin and toilet. The wash basin and toilet may be combined in one unit. The wash basin shall have hot and cold running water;

3. Detention strength light fixtures that shall provide at least 10 footcandles of illumination, 30 inches above the floor. Lights shall have a dimming capability or there shall be a night light to allow for comfortable sleeping; and

4. A detention strength, metal, institution–type mirror that is not removable.

(e) There shall be at least one shower or bathtub in each area where cells are located. There shall be hot and cold running water in the showers and bathtubs and the hot water shall maintain a minimum temperature of 110°F to the mixer. In this subsection, "mixer" means the part of the plumbing system which combines hot and cold water.

**(4)** DAYROOMS. (a) All dormitories and cells, except receiving cells and holding rooms, shall be provided with one or more dayrooms in their immediate vicinity that are accessible to inmates. If the dayroom is an area within a dormitory, the requirements under sub. (6) (b) apply.

(b) Each dayroom shall have detention strength tables and seating for the number of occupants of the dormitory or cells that have access to the dayroom.

(c) Illumination in dayrooms may not be less than 10 footcandles, 30 inches above the floor.

**(5)** RECEIVING CELLS. (a) All receiving cells shall be designed and used for single occupancy.

(b) Each receiving cell shall have a floor area of at least 54 square feet. The distance between the floor and ceiling may not be less than 8 feet and the distance between opposite walls may not be less than 6 feet.

(c) Each receiving cell shall have:

1. A rigidly constructed metal bed with the frame bracketed to the wall or bolted to the floor or a bed built in masonry construction of a similar strength;

2. A detention strength, metal, institution–type wash basin and toilet. The wash basin and toilet may be combined in one unit. The wash basin shall have hot and cold running water; and

3. Detention strength light fixtures that shall provide at least 10 footcandles of illumination, 30 inches above the floor. Lights shall have a dimming capability or there shall be a night light to allow for comfortable sleeping.

**(6)** DORMITORIES. (a) Inmates may be housed in dormitories if the inmates are of the same security classification and properly segregated as required under s. 302.36, Stats.

(b) Each dormitory shall have a minimum floor area of 35 square feet per occupant, excluding the toilet and shower area. Each dormitory shall have a floor to ceiling height of not less than 8 feet.

(c) A detention strength bed shall be provided for each occupant of a dormitory.

(d) A secured area for personal property shall be provided for each occupant of a dormitory.

(e) Dormitories shall be provided with illumination of at least 10 footcandles 30 inches above the floor and with the ability to reduce lighting during sleeping hours to a level which is enough for security checks.

(f) Each dormitory shall provide adequate showers or bathtubs, toilets and wash basins for the occupants. Each dormitory shall have hot and cold running water and the hot water shall maintain a minimum temperature of 110°F to the mixer. In this subsection, "mixer" means the part of the plumbing system which combines hot and cold water.

(g) Dormitories shall be constructed of materials of detention strength and shall be provided with detention strength equipment.

**(7)** HOLDING ROOMS. (a) Holding rooms shall only be used for admission, release and investigative purposes. A holding room may not be used as a cell, dormitory or receiving cell. Holding rooms shall be located in an area that allows continuous staff observation or electronic video surveillance of inmates. Supervision is subject to the requirements of ss. 302.41 and 302.42, Stats.

(b) Holding rooms may be designed and used for multiple occupancy for inmates of the same classification who are properly segregated under ss. 938.209 and 302.36, Stats.

(c) Each holding room shall contain detention strength, rigidly constructed seats or benches bracketed to the wall or bolted to the floor or seats or benches of masonry construction of a similar strength.

(d) A detention strength, institution–type wash basin and toilet shall be provided.

(e) A holding room shall have a floor area of at least 50 square feet with an additional 10 square feet for each occupant above 5.

**(8)** MULTIPURPOSE ROOM. Each jail shall provide a multipurpose room for recreation, physical exercise and congregate assembly other than visiting. The multipurpose room shall have a minimum floor area of 300 square feet.

**(9)** EXTERIOR WINDOWS. (a) This subsection applies to all windows that lead to the exterior of the jail or to an area outside the secure perimeter of the jail.

(b) All exterior windows shall be translucent or shall be located to prevent persons outside the secure perimeter of the jail from observing inmates within the jail.

(c) Each exterior window that has an opening in any direction in excess of $5\frac{1}{2}$ inches shall be covered with security steel grills to prevent escape.

(d) If an exterior window is accessible to inmates and opens, the window shall be mounted in a detention strength frame and shall be covered on the inside with a 1,600 pound per lineal inch tensile strength security screen of .047 mil. wire diameter to prevent the passage of contraband.

(e) If an exterior window is not accessible to inmates and opens, the window's security screen need not meet the requirements of par. (d), but the screen shall have a tensile strength of at least 800 pounds per lineal inch and shall be made of wire of at least .028 mil. diameter.

(f) If an exterior window does not open, whether or not it is accessible to inmates, the security screen required under par. (d) or (e) may be omitted if the window is mounted in a detention strength frame and the pane is security glass of sufficient strength to resist breakage and prevent the passage of contraband.

**(10)** EXTERIOR APPROACHES. The exterior of the jail and approaches to the jail shall be well lighted at night to permit observation of persons approaching the building.

**(11)** WALLS. (a) Walls on the exterior of the jail shall be constructed of reinforced concrete or fully grouted concrete block at least 8 inches thick, or the walls shall be constructed of materials of similar strength which provide equivalent security.

(b) Walls in the interior of the jail shall be constructed of reinforced concrete or fully grouted concrete block at least 6 inches thick, or the walls shall be constructed of materials of similar strength which provide equivalent security.

**(12)** CEILINGS. Ceilings in areas accessible to inmates shall be constructed of pre–cast concrete or flat steel of at least 3/16 inch thickness, or ceilings shall be constructed of materials of similar strength which provide equivalent security.

**(13)** DOORS AND LOCKS. (a) Every door that leads to the exterior of the jail or to an area outside the secure perimeter of the jail shall have a sill designed to prevent the introduction of contraband.

(b) Every door entering into the secure perimeter of the jail shall be of detention strength. Each of these doors shall have a vision panel or other means of observation to permit identification of individuals before they enter an area within the secure perimeter of the jail and to allow observation of an area before entering it. If the vision panel has an opening in any direction in excess of $5\frac{1}{2}$ inches, the opening shall be covered with detention strength steel grills to prevent escape.

(c) In multiple cell sections, except for receiving cell sections, the mechanical means of emergency release may not be operated by key locks in the door or cells. The mechanical means of emergency release shall be operated by remote control located in an area not accessible to inmates. In receiving cells, the mechanical means of emergency release may be operated by key locks in the doors of cells.

**(14)** ACCESS TO CONTROLS. Inmates may not have access to plumbing, wiring, vents, thermostats, switches or controls, except that inmates in dormitories may have limited control over lights, heating, radios and televisions.

**History:** Cr. Register, February, 1990, No. 410, eff. 3–1–90; r. and recr. (3), am. (4) (a) and (b), (6) (b), (d) and (f), (7) (a) and (d), Register, November, 1990, No. 419, eff. 12–1–90; correction in (7) (b) made under 13.93 (2m) (b) 7., Stats., Register, June, 1999, No. 522.

**DOC 350.06 Physical environment of existing jails.** **(1)** This section applies to jails that were constructed before March 1, 1990 and have not been substantially remodeled on or after March 1, 1990.

**(2)** Except if s. DOC 350.07 applies, each cell shall be designed and used for single occupancy only.

**(3)** Except if s. DOC 350.07 applies, each cell shall be at least $5\frac{1}{2}$ feet wide and $7\frac{1}{2}$ feet long.

**(4)** Each cell shall contain a rigidly constructed metal bunk with the frame bracketed to the wall or bolted to the floor or a bed built in masonry construction of a similar strength for each inmate, a prison–type wash bowl and a prison–type toilet.

**(5)** There shall be adequate showers or bathtubs for the inmates. The supply of hot and cold water shall be adequate.

**(6)** Inmates may be housed in dormitories if the inmates are of the same security classification and properly segregated as required under s. 302.36, Stats. Dormitories may be used for Huber law inmates or other groups by classification. Dormitories shall include sufficient wash basins, toilets and showers.

**(7)** All windows accessible to prisoners shall be covered with a heavy gauge screen of $\frac{1}{4}$" mesh or less or a detention screen to prevent passage of contraband. If the window leads to the exterior of the jail or to an area outside the secure perimeter of the jail and the exterior window does not open, the detention screen may be omitted if the window is mounted in a detention strength frame and the pane is security glass of sufficient strength to resist breakage and prevent the passage of contraband.

**(8)** An approved security door with an observation opening shall be provided for each entrance into the secure perimeter of a jail. The door may not be unlocked except to admit authorized persons and inmates.

*The Wisconsin Administrative Code on this web site is updated on the 1st day of each month, current as of that date. See also Are the Codes on this Website Official?*



Case 2:11-cv-01131-LA Filed 02/21/13 Page 3 of 8 Document 166-1

**(9)** A detention strength locking device shall be installed on each security door. Jail sections having multiple cells shall be provided with locking devices so that doors may be unlocked by a remote release located in an area not accessible to inmates.

**(10)** The exterior of and approaches to the jail shall be well lighted at night to permit observation of persons approaching the building.

**History:** Cr. Register, February, 1990, No. 410, eff. 3–1–90; r. and recr. Register, November, 1990, No. 419, eff. 12–1–90.

**DOC 350.07 Double celling.** A jail may use cells for double occupancy if all of the following conditions are met:

**(1)** (a) In jails that are constructed or substantially remodeled on or after March 1, 1990, to be used for double occupancy, a cell shall have a floor area of at least 70 square feet.

(b) In jails that were constructed before March 1, 1990, and have not been substantially remodeled on or after March 1, 1990, to be used for double occupancy, a cell shall have a floor area of at least 54 square feet.

**(2)** The county board and sheriff shall determine jointly the adequate staffing needs, including support staff and services, that are required to ensure the health, safety and security of the jail staff and inmates when using cells for double occupancy. The county board and sheriff shall reduce any joint determinations to writing, signed by representatives of the county board and sheriff, and shall file the written joint determination with the department. The written joint determination shall remain in effect until rescinded or amended by mutual written agreement of the county board and sheriff. Unless there is adequate staff as agreed upon by the county board and sheriff, double celling may not occur.

**(3)** Inmates housed in the same cell shall have the same security classification and be properly segregated as required under s. 302.36, Stats.;

**(4)** Except in an emergency, inmates shall be allowed out of their cells a minimum of 14 hours per day;

**(5)** At any given time, at least one cell or 15% of a jail's total number of cells used for male prisoners, excluding receiving cells and holding rooms, whichever is greater and, at least one cell or 15% of a jail's total number of cells used for female prisoners, excluding receiving cells and holding rooms, whichever is greater, may not be used for double occupancy.

**(6)** Receiving cells may not be used for double occupancy;

**(7)** When inmates are locked in their cells, jail staff shall physically observe each inmate in all areas of the jail containing double occupancy cells at least once every 60 minutes at irregular intervals;

**(8)** Each cell used for double occupancy shall have a dayroom in its immediate vicinity that is accessible to inmates. The dayroom shall have detention strength tables and seating for the number of occupants of the cells that have access to the dayroom; and

**(9)** If a jail uses cells for double occupancy in a housing unit, the dayrooms in that housing unit may not be used for sleeping purpose.

**History:** Cr. Register, November, 1990, No. 419, eff. 12–1–90.

**DOC 350.08 Sanitation and hygiene.** All jails shall meet the requirements of ch. DHS 190. In addition:

**(1)** Inmates assigned to the kitchen who prepare, handle or serve food shall bathe or shower daily;

**(2)** Blankets shall be laundered or sterilized before reissue. Blankets used with sheets shall be laundered at least every 3 months and blankets used without sheets shall be laundered at least weekly;

**(3)** Sheets, pillowcases and mattress covers shall be changed and washed at least weekly;

**(4)** Clean towels shall be issued to each inmate twice a week;

**(5)** Mattresses shall be provided where there is a need for overnight detention. Each mattress and each pillow, if used, shall be covered with a fire retardant, waterproof, easy–to–sanitize material. Mattresses and pillows shall be kept in good repair and in a clean and sanitary condition. The sheriff shall provide adequate bedding;

**(6)** Suppliers of mattresses and pillows shall provide evidence to the sheriff that the products are fire retardant, waterproof and easy to clean; and

**(7)** Mattresses shall be at least 3 inches thick and of proper size to fit the bed.

**(8)** Containers of poisonous compounds used for exterminating rodents or insects shall be prominently and distinctly labeled for easy identification of contents. Poisonous compounds shall be stored independently and separately from food and kitchenware in a locked area not accessible to inmates.

**(9)** The sheriff shall provide an inmate whose clothing has been confiscated with adequate and appropriate clothing, including footwear, for use while the inmate is in custody.

**(10)** After 24 hours, inmates shall be notified that, upon request, they will be provided with towels and toilet articles sufficient for the maintenance of cleanliness and hygiene, including toothpaste and toothbrush, soap and comb. Basic feminine hygiene materials and toilet paper shall be provided to inmates upon request. There shall be no common use of toothbrushes, combs, shaving materials or feminine hygiene materials.

**History:** Cr. Register, February, 1990, No. 410, eff. 3–1–90; renum; from DOC 350.07 and am. (1), (5) and (6), Register, November, 1990, No. 419, eff. 12–1–90; (8) to (10) renum. from DOC 350.09 (7), (9) and (10), Register, December, 1992, No. 444, eff. 1–1–93; correction in (intro.) made under 13.93 (2m) (b) 7., Stats., Register, June, 1999; correction in (intro.) made under s. 13.92 (4) (b) 7., Stats., Register June 2011 No. 666.

**DOC 350.09 Health care. (1)** The sheriff shall provide or secure necessary medical treatment and emergency dental care for inmates in custody.

**(2)** No prescription medications or treatments may be administered unless prescribed by a physician. If a nurse or physician is not available, jail staff may deliver prescribed doses of oral medication at prescribed times.

**(3)** Medical records shall be kept separate from other records and shall be maintained in a confidential manner in accordance with ss. 146.81 to 146.83, Stats., and any other applicable state or federal laws.

**(4)** Any medications kept at the jail shall be stored in a locked drug cabinet that is not accessible to inmates.

**(5)** If an inmate dies or becomes acutely ill while in custody, the next of kin shall be notified as soon as possible.

**(6)** Inmates shall be served nutritionally balanced meals. Menus shall be kept for 90 days for review. An inmate shall be provided with a special diet if ordered by a physician.

**History:** Cr. Register, February, 1990, No. 410, eff. 3–1–90; renum. from DOC 350.08 and am. (2), (8) to (10), Register, November, 1990, No. 419, eff. 12–1–90; r. (1), renum. (2) to (6) and (8) to be (1) to (6) and am. (3), renum. (7), (9) and (10) to be DOC 350.08 (8) to (10), Register, December, 1992, No. 444, eff. 1–1–93.

**DOC 350.10 Fire safety. (1)** Each jail shall have and shall properly maintain fire alarms, smoke and thermal detectors, fire extinguishers, fire attack equipment and self–contained breathing apparatuses which operate for at least 30 minutes. This equipment shall be placed in the jail in accordance with the advice of the local fire department.

**(2)** Each jail shall develop written policies on fire protection, evacuation, including evacuation of persons with disabilities, and training of staff in equipment use and evacuation. The policies shall comply with local fire department recommendations.

**(3)** The evacuation route developed as part of the evacuation policy under sub. (2) shall be posted in a conspicuous place for jail staff in the jail.


Case 2:11-cv-01131-LA Filed 02/21/13 Page 4 of 8 Document 166-1

**(4)** The sheriff shall arrange for a fire inspection by the local fire department at least once every 6 months. Documentation of fire inspections shall be included in facility files.

**History:** Cr. Register, February, 1990, No. 410, eff. 3–1–90; renum. from DOC 350.09 and am. (4), Register, November, 1990, No. 419, eff. 12–1–90.

**DOC 350.11 Records and reporting. (1)** REGISTER OF INMATES. Each jail shall keep a register of all inmates. The register shall contain identifying information on each inmate, including name, residence, age, sex, race, court order, time and cause of placement and placing authority, and time of release and releasing authority. If an inmate escapes, the time and manner of the escape shall be recorded in the register.

**(2)** JAIL LOG. Each jail shall have a log which shall include the information required in ss. DOC 350.12 (1) and (5), 350.13 (5), and 350.15 (2) (g) and (3) (k). The log shall be maintained by shift on a daily basis.

**(3)** STORAGE OF RECORDS. Records shall be kept in a secure area. Juvenile records shall be kept separate from records of inmates 18 years of age or older and shall be maintained in a confidential manner in accordance with s. 938.396, Stats., and any other applicable federal or state law.

**(4)** REPORTING REQUIREMENTS. (a) The sheriff shall notify the division's regional detention facilities specialist within 48 hours after any of the following events occur:

1. An inmate dies; or

2. An inmate attempts suicide and is admitted to a hospital, not including an emergency room admission or admission for detention and evaluation under ch. 51, Stats., or is provided medical treatment for a life–threatening injury incurred as a result of the suicide attempt.

(b) Information requested by the division shall be promptly furnished by the sheriff.

**History:** Cr. Register, February, 1990, No. 410, eff. 3–1–90; correction in (3) made under 13.93 (2m) (b) 7., Stats., Register, June, 1999.

**DOC 350.12 Security. (1)** Jail staff shall conduct physical inspections of each inmate in all areas of the jail occupied by inmates at frequent and irregular intervals, during the day or night, to ensure that inmates are in custody and are safe. Inmates who have been identified by jail staff as having a special medical or mental health problem shall be physically observed at more frequent intervals. Each inspection shall be documented.

**(2)** There shall be at least 3 complete sets of jail and fire escape keys, one set in use, one set stored in a safe place which is accessible only to jail personnel for use in an emergency and one set stored in a secure place outside the jail.

**(3)** All jail personnel shall be given instructions concerning the use and storage of jail and fire escape keys and shall be held strictly accountable for keys assigned to them.

**(4)** All jail personnel shall be familiar with the locking system of the jail and shall be able to release inmates promptly in the event of a fire or other emergency.

**(5)** The sheriff shall ensure that monthly inspections are made to determine if cell and fire escape locks and doors are in good working order. Each inspection shall be recorded in the jail log.

**History:** Cr. Register, February, 1990, No. 410, eff. 3–1–90; renum. from DOC 350.11 and am. (1) and (5), Register, November, 1990, No. 419, eff. 12–1–90.

**DOC 350.13 Administrative confinement. (1)** In this section,"administrative confinement" means a nonpunitive, segregated confinement of an inmate in his or her cell or other isolated area solely because he or she is dangerous, to ensure personal safety and security within the jail.

**(2)** An inmate may be placed in administrative confinement only if the inmate's continued presence in the general population:

(a) Presents a substantial risk of physical harm to the inmate, another person or property;

(b) Threatens the security and order of the jail; or

(c) Inhibits a pending disciplinary investigation.

**(3)** A jail staff member shall inform his or her immediate supervisor of any incident that may require administrative confinement of an inmate and the supervisor shall determine whether to place the inmate in administrative confinement. In the absence of his or her immediate supervisor, a jail staff member may place an inmate in administrative confinement. The staff member's supervisor shall review that placement decision within 24 hours.

**(4)** An inmate's progress in administrative confinement shall be periodically reviewed by the jail staff member's immediate supervisor. The supervisor shall determine when the inmate no longer presents a threat to the safety, security and order of the jail and may be released to the general population.

**(5)** The reason an inmate is placed in administrative confinement and the length of time the inmate remains in administrative confinement shall be entered in the inmate's file and in the jail log by the jail staff member or his or her immediate supervisor.

**History:** Cr. Register, February, 1990, No. 410, eff. 3–1–90; renum. from DOC 350.12, Register, November, 1990, No. 419, eff. 12–1–90.

**DOC 350.14 Use of force. (1)** Jail staff may use physical force against an inmate only if force is necessary to change the location of an inmate or to prevent death or bodily injury to the staff member, the inmate or someone else, unlawful damage to property or the escape of an inmate from the jail. Staff may use only the amount of force reasonably necessary to achieve the objective for which force is used. Corporal punishment of inmates is forbidden.

**(2)** Any staff member who has used force to control an inmate or inmates shall submit a written report to the sheriff, jail administrator or the staff member's immediate supervisor describing the incident. The report shall include all known relevant facts.

**History:** Cr. Register, February, 1990, No. 410, eff. 3–1–90; renum. from DOC 350.13, Register, November, No. 419, eff. 12–1–90.

**DOC 350.15 Discipline. (1)** INMATE RULES OF BEHAVIOR. Every jail shall have written rules of behavior for inmates. At the time of admission, each person shall be notified verbally of the existence of the jail's rules for inmate behavior and the potential disciplinary actions imposed for violation of the rules. Each inmate shall be provided with a copy of the jail rules or copies of the rules shall be posted in conspicuous places in the jail.

**(2)** DISCIPLINE FOR A MINOR VIOLATION. (a) In this subsection,"minor violation" means a violation of the jail's rules of behavior for which a minor penalty or penalties may be imposed if the accused inmate is found guilty. A minor penalty is a verbal or written reprimand, restriction of privileges for 24 hours or less or placement in punitive segregation for 24 hours or less.

(b) A staff member who observes an inmate committing a minor violation shall inform the inmate of the rule that he or she has violated, the contemplated penalty and the disciplinary procedures for minor violations under pars. (c) to (g).

(c) The staff member shall give the inmate an opportunity to make a verbal statement about the alleged violation to the staff member.

(d) The staff member may impose a minor penalty if he or she finds that a violation occurred.

(e) The staff member shall inform his or her supervisor of the incident and the penalty administered as soon as the supervisor is available. The supervisor shall review the incident and penalty administered. If the supervisor concludes that the violation constitutes a major violation, the alleged infraction shall be handled in accordance with sub. (3). If the supervisor finds that no violation has occurred, the inmate shall be notified that the charge has been dismissed.

(f) The inmate may appeal the supervisor's decision. The jail shall have a procedure for an inmate to follow if the inmate wishes to appeal that decision. The inmate shall be notified of his or her

right to appeal the supervisor's decision and of the jail's procedure for making the appeal.

(g) Information about the incident, the penalty administered and the supervisor's decision shall be made part of the inmate's file and shall be entered in the jail log. If the supervisor finds that no violation occurred or if the reviewer of an appeal submitted under par. (f) finds that no violation occurred, the records of the incident shall be removed from the inmate's file.

**(3)** DISCIPLINE FOR A MAJOR VIOLATION. (a) In this subsection,"major violation" means a violation of the jail's rules of behavior for which a major penalty or penalties may be imposed if the accused inmate is found guilty. A major penalty is restriction of privileges for more than 24 hours, placement in solitary confinement for more than 24 hours in accordance with s. 302.40, Stats., loss of good time in accordance with s. 302.43, Stats., restrictions affecting Huber law privileges in accordance with s. 303.08, Stats., or restrictions affecting work release in accordance with s. 303.065, Stats.

(b) A staff member who observes an inmate committing a major violation shall submit a written report to his or her supervisor within 24 hours of the incident. The report shall include:

1. A formal statement of the charge or charges, including the specific rule or rules violated;

2. A detailed description of the facts concerning the incident, including the date and time of the incident;

3. Any unusual inmate behavior;

4. Staff and inmate witnesses;

5. The disposition of any physical evidence;

6. Any immediate action taken, including the use of force; and

7. The staff member's signature and the time and date of the report.

(c) The inmate shall be notified of the charges and of his or her right to a hearing under par. (d) at least 24 hours in advance of the hearing. The inmate may waive this time requirement.

(d) A due process hearing shall be held unless the inmate waives his or her right to a hearing. An inmate may waive the right to a due process hearing in writing at any time. If the inmate waives the right to a due process hearing, the violation shall be disposed of in accordance with the procedures for minor violations under sub. (2), except that a major penalty may be imposed if the relevant staff member finds a violation occurred. A waiver does not constitute an admission of the alleged violation.

(e) An impartial hearing officer or committee shall conduct the due process hearing. The hearing may not be conducted by a person who may review an appeal made under par. (j) or who has personally observed, been a part of or investigated the incident which is the subject of the hearing.

(f) The inmate has the right to be present at the hearing, to make a statement and to present relevant evidence. If the inmate refuses to attend the hearing or disrupts the hearing, the hearing may be conducted without the inmate being present. The hearing officer or committee may hear the testimony of a witness outside the presence of the accused inmate if there is a significant risk of bodily harm to the witness in testifying in front of the accused inmate. The reason for the accused inmate's absence shall be documented.

(g) The inmate has the right to present any relevant witness whose testimony is not cumulative of other evidence unless the safety of any other witness or the security of the jail would be threatened if that witness testified. The reasons for the absence of the witness shall be documented.

(h) If the inmate is illiterate or the issues are complex, the inmate has the right to a staff advocate or adequate substitute aid to assist him or her in understanding the charges and preparing a defense.

(i) The hearing officer or committee shall issue a written decision which shall state the punishment to be administered. The inmate shall receive a written copy of the decision before punishment is administered.

(j) The inmate shall be notified of his or her right to appeal the hearing officer's or committee's decision and of the jail's procedure for making an appeal.

(k) Information on the incident, the punishment administered and the hearing officer's or committee's decision shall be made part of the inmate's file and shall be entered in the jail log. If the hearing officer or committee or the reviewer under par. (j), upon appeal, finds that no violation occurred, the record of the incident shall be removed from the inmate's file.

**History:** Cr. Register, February, 1990, No. 410, eff. 3–1–90; renum. from DOC 350.14, Register, November, No. 419, eff. 12–1–90.

**DOC 350.16 Exceptions. (1)** The department may grant a variance to a requirement found in this chapter, except that no variance may be granted for the conditions required to permit double celling under s. DOC 350.07 or for any requirement specifically imposed by Wisconsin Statutes.

**(2)** In order to obtain a variance, the sheriff shall demonstrate in writing that strict enforcement of the rule would result in unreasonable hardship for administration of the jail and that the variance would provide equivalent or better protection for the health, safety, welfare and rights of inmates and the public.

**(3)** The department may impose specific conditions including reasonable time limits on a variance in order to protect the health, safety, rights or welfare of inmates or the public.

**(4)** Violation of any condition under which a variance is granted constitutes a violation of this chapter. Upon finding that there has been a violation of a condition of the variance, the department may revoke the variance and require strict enforcement of the rule.

**History:** Cr. Register, February, 1990, No. 410, eff. 3–1–90; renum. from DOC 350.15 and am. Register, November, 1990, No. 419, eff. 12–1–90.

**DOC 350.17 Policy and procedure manual. (1)** CONTENT OF MANUAL. The sheriff shall develop a written policy and procedure manual for the operation of each jail. The policies and procedures contained in the manual shall be developed in consultation with outside resources, such as medical, mental health, alcohol and other drug abuse, and developmental disabilities providers, and shall reference any agreements with such providers for the provision of services to inmates identified as needing care and treatment. The manual shall contain the following components:

(a) Statement of the availability of the manual to staff.

(b) Statement of the policies of the facility on inmate programs, including inmate health screening and care, suicide prevention, control and administration of medications, communicable disease control, mail, visitation, religious programming, recreation, reading materials, and canteen.

(c) Statement of the procedure for notification of inmates of each policy under par. (b).

**(2)** SUBMISSION AND APPROVAL OF MANUAL. (a) *Division approval.* The sheriff shall submit the initial policy and procedure manual to the division for approval by April 1, 1993.

1. The division shall approve or disapprove the manual in writing within 90 days after submission. If the division approves the manual, the division shall notify the sheriff in writing of the approval.

2. If the division disapproves the manual, the division shall notify the sheriff in writing of the decision and the reasons for the disapproval. If the sheriff accepts the decision, the sheriff shall submit a revised manual which conforms with the decision within 21 days of the date of the disapproval. If the sheriff does not accept the decision of the division, then the sheriff may appeal under par. (b).

(b) *Appeal to secretary.* Within 21 days of the date of the disapproval, the sheriff may appeal the division's disapproval to the secretary. The secretary shall issue a decision within 30 days of

the appeal. The decision shall be in writing and shall state the reasons for the decision. If required by the secretary's decision, the sheriff shall modify the manual and resubmit it within 60 days of the decision to the division.

(c) *Changes to manual.* Any proposed substantive changes to an approved manual shall be submitted to the division and shall be reviewed under the procedures of this section.

**History:** Cr. Register, December, 1992, No. 444, eff. 1–1–93.

**DOC 350.18 Inmate health screening and care.** The manual under s. DOC 350.17 shall contain policies and procedures for inmate health screening and care, including the following components:

**(1)** Health screening form which is developed in conjunction with health care professionals and which is used at booking to obtain information relating to each inmate's medical and dental condition, medical illnesses or disabilities, mental illnesses, developmental disabilities, alcohol or other drug abuse problems and suicide risk.

**(2)** Procedures for the documentation of health screening results, referrals made or health care provided and maintenance of documents in an inmate's confidential medical file.

**(3)** Names, addresses and telephone numbers of health care providers or agencies who have agreed to provide emergency and other health care services for special needs inmates.

**(4)** Procedures for the referral of an inmate to jail health care staff or to other agencies which provide health care.

**(5)** Designation of staff who have the authority to make health care decisions, including emergency medical and dental care.

**(6)** Non–emergency health care, including use of an inmate's personal physician.

**(7)** Schedule of inmate access to routine medical care.

**(8)** Procedure for processing inmate medical requests, including written disposition.

**(9)** Documentation in an inmate's confidential medical file of any referral and identification of the services provided, including emergency services.

**(10)** Provision of special diet if ordered by a physician.

**(11)** Maintenance of agreements between the jail and providers of health care services.

**History:** Cr. Register, December, 1992, No. 444, eff. 1–1–93.

**DOC 350.19 Suicide prevention.** The manual under s. DOC 350.17 shall contain policies and procedures relating to the supervision and housing of inmates who may be at risk of seriously injuring themselves, including the following components:

**(1)** Assessment of an inmate's suicide risk at booking and documentation of the results.

**(2)** Designation of person who may assess an inmate's level of suicide risk and who may authorize placement on and removal from a suicide watch status for inmates who are suicide risks.

**(3)** Identification of housing areas for inmates who are suicide risks.

**(4)** Referral of inmates who are suicide risks to mental health care providers or facilities.

**(5)** Supervision of inmates who are suicide risks, including frequency of observation and documentation of supervision.

**(6)** Communication between health care and jail personnel regarding the status of an inmate who is a suicide risk.

**(7)** Intervention of a suicide in progress, including first aid measures.

**(8)** List of persons to be notified in case of potential, attempted or completed suicides.

**(9)** Documentation of actions and decisions regarding inmates who are suicide risks.

**History:** Cr. Register, December, 1992, No. 444, eff. 1–1–93.

**DOC 350.20 Control and administration of medications.** The manual under s. DOC 350.17 shall contain policies and procedures relating to the control and administration of prescription and nonprescription medications, including the following components:

**(1)** Determination by appropriate personnel that all medications brought in by inmates or other persons for an inmate are necessary.

**(2)** Inventory and secured storage of all medications brought into the jail.

**(3)** Designation of staff who are authorized to administer or who are authorized to deliver medication to inmates.

**(4)** Administration or delivery of prescription and nonprescription medications to inmates.

**(5)** Documentation of all medication administered or delivered to an inmate, including, who prescribed the medication, who administered or delivered the medications and the date and time of administration or delivery. All refusals of recommended or prescribed medications by an inmate must be documented.

**(6)** Return of an inmate's medications inventoried at admission.

**(7)** Inventory or disposal of unused medications upon the inmate's release or transfer.

**History:** Cr. Register, December, 1992, No. 444, eff. 1–1–93.

**DOC 350.21 Communicable disease control.** The manual under s. DOC 350.17 shall contain policies and procedures relating to the care, treatment and supervision of inmates who may have communicable diseases, including the following components:

**(1)** Provision of treatment and supervision of inmates during isolation or quarantine under s. 252.06 (6) (b), Stats.

**(2)** Documentation of the need for isolation or quarantine under s. 252.06 (6) (b), Stats., in the inmate's confidential medical file.

**(3)** Provision of laboratory screening for inmates who may have been exposed to a communicable disease if ordered by medical personnel.

**History:** Cr. Register, December, 1992, No. 444, eff. 1–1–93; corrections in (1) and (2) made under s. 13.93 (2m) (b) 7., Stats., Register, June, 1999, No. 522.

**DOC 350.22 Mail.** The manual under s. DOC 350.17 shall contain policies and procedures relating to written contact between inmates and their families, friends, attorneys, the court system, governmental officials and others, including the following components:

**(1)** Provision for staff inspection and reading of nonprivileged incoming and outgoing mail.

**(2)** Delivery of all nonprivileged incoming mail.

**(3)** Provision for the limited inspection of incoming and outgoing privileged mail.

**(4)** Delivery of all approved privileged mail.

**(5)** Inventory and disposition of contraband items found in mail.

**(6)** Provision of postage to indigent inmates.

**History:** Cr. Register, December, 1992, No. 444, eff. 1–1–93.

**DOC 350.23 Visitation.** The manual under s. DOC 350.17 shall contain policies and procedures relating to visitation, including the following components:

**(1)** Establishment of visitation schedule for family, friends, attorneys and others.

**(2)** Establishment of procedures for requesting visitation during nonscheduled times.

**(3)** Documentation of all visits through a visitor log or register.

**(4)** Establishment of a search policy of visitors and their possessions.

**(5)** Posting of visitation policies and procedures, including visitation schedule, in a place readily accessible to visitors and inmates.

**History:** Cr. Register, December, 1992, No. 444, eff. 1–1–93.

**DOC 350.24 Religious programming.** The manual under s. DOC 350.17 shall contain policies and procedures relating to religious programming, including the following components:

**(1)** Identification of religious organizations and clergy willing to conduct religious services in the facility.

**(2)** Notification of inmates of the schedule of religious services available in the jail.

**(3)** Identification of religious items which may be kept on an inmate's person or in the cell.

**(4)** Provision of Bibles or Qurans upon request under s. 302.39, Stats.

**History:** Cr. Register, December, 1992, No. 444, eff. 1–1–93.

**DOC 350.25 Recreation.** The manual under s. DOC 350.25 shall contain policies and procedures identifying the recreational activities which are available and when they are scheduled.

**History:** Cr. Register, December, 1992, No. 444, eff. 1–1–93.

**DOC 350.26 Reading materials.** The manual under s. DOC 350.17 shall contain policies and procedures relating to access to reading materials, including the following components:

**(1)** Provision of reading materials of general interest, such as books, newspapers and magazines, for inmates.

**(2)** Identification of reading materials which are prohibited for inmates because their content creates a security risk.

**(3)** Inspection of reading materials brought by visitors for inmates if the jail allows visitors to bring in reading materials.

**History:** Cr. Register, December, 1992, No. 444, eff. 1–1–93.

**DOC 350.27 Canteen.** The manual under s. DOC 350.17 shall contain policies and procedures for the establishment and use of canteen, vending or other similar services for inmates.

**History:** Cr. Register, December, 1992, No. 444, eff. 1–1–93.

*The Wisconsin Administrative Code on this web site is updated on the 1st day of each month, current as of that date. See also Are the Codes on this Website Official?*



Case 2:11-cv-01131-LA Filed 02/21/13 Page 8 of 8 Document 166-1