# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ROBERT L. TATUM,

Plaintiff,

-vs-                                                      Case No.   11-CV-1131

DAVID A. CLARKE, JR., DI KEVIN NYKLEWICZ,
CAPTAIN PETER JASKULSKI, CAPTAIN MELISSA ELLIOT,
LT. ABIE DOUGLAS, LT. TRICIA CARLSON,
SGT. FATRENA HALE, SGT. SARAH WRONSKI,
SGT. THOMAS TRETTIN, SGT. THOMAS LIEBENTHAL,
SGT. GARY COLEMAN, SGT. BRET MYERS,
DETECTIVE TIMOTHY LORCH,
DETECTIVE MITCHELL GOTTSCHALK,
CO PATRICK DIGGINS-DAVIS, CO DENNIS MCKNIGHT,
CO JUSTIN GEORGESON, CO CHARLES HOLT,
CO EDWARD HORZEWSKI, CO JAMES KOSCIELAK,
CO CHERI SHMITZ, TINA WATTS,
RN CHRIS LUBUS, CO MATT LEETE,
PSW KIRK LAUSTERER, SGT. JOHN NOVOTNY,
CO JOHN WOODS, JANE LUNA,
JOHN DOE, Sued as Tim Doe, Cert Team LR,
CO SEAN HENDERSON, CO MICHAEL LEEMAN,
CO DESHAWN MCKINLEY,
UNKNOWN, Sued as RN #2, #3, #5, #6, #7,
JOHN D. KRAKLOW, originally sued as John Doe (Tim Doe Cert Team LR),
DECORIE SMITH, originally sued as John D. Smith,[1]

Defendants.

# DECISION AND ORDER

---

[1] Based on the Defendants' Brief in Support of Summary Judgment (ECF No. 161) the names of the following Defendants have been corrected: Nyklewicz, Elliot, Carlson, Hale, Myers, Schmitz and Novotny.

The plaintiff, a Wisconsin state prisoner, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 and was granted leave to proceed in forma pauperis. He is proceeding on claims that the defendants subjected him to constitutional violations and torts while he was confined at the Milwaukee County Jail during 2010 and 2011. The defendants have filed a motion for summary judgment. For the reasons stated herein, the motion will be granted in part and denied in part.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not

2

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

**FACTS**[2]

**A. Parties**

The plaintiff, Robert Tatum, was a pretrial detainee at the Milwaukee County Correctional Facility-Central ("Jail") at all times relevant. He was confined at the Jail from June 4, 2010 until his transfer to Columbia Correctional Institution on June 15, 2011.

The plaintiff is suing the following defendants who worked in the designated capacities at all times relevant: Milwaukee County Sheriff David A. Clarke, Jr.; Deputy Inspector Kevin Nyklewicz, incorrectly identified as Kevin Nylewicz; Captain Peter Jaskulski; Captain Melissa Elliot, incorrectly identified as Millissa Elliot; Lieutenant Abie Douglas; Lieutenant Tricia Carlson, incorrectly identified as Tricia Carlsan; Sergeant Fatrena Hale, incorrectly identified as Fatrina Hale; Sergeant Sarah Wronski; Sergeant Thomas Trettin; Sergeant Thomas Liebenthal; Sergeant Gary Coleman; Sergeant Bret Myers, incorrectly identified as Bret Meyers; Sergeant John Novotny, incorrectly identified as John Novathy; Detective Timothy Lorch; Detective Mitchell Gottschalk; Correctional Officer

---

[2] Facts are taken from the Defendants' Proposed Findings of Fact and the Plaintiff's Response to the Defendants' Proposed Findings of Facts. *See* Civil L. R. 56(b) (E.D. Wis.).

3

Patrick Diggins-Davis; Correctional Officer Dennis McKnight; Correctional Officer Justin Georgeson; Correctional Officer Charles Holt; Correctional Officer Edward Horzewski; Correctional Officer James Koscielak; Correctional Officer Matthew Leete; Correctional Officer John Woods; Correctional Officer Jane Luna; Correctional Officer Sean Henderson; Correctional Officer Michael Leeman; Correctional Officer DeShawn McKinley; Correctional Officer John D. Smith, later identified as DeCorie Smith; Correctional Officer Cheri Schmitz, incorrectly identified as Sheri Schmitz; Registered Nurse supervisor Tina Watts; Registered Nurse Chris Lubus, registered nurse; Psychiatric Social Worker Kirk Lausterer; and Correctional Officer/CERT Team LR Tim "Doe," also known as Calvin Smith.

The plaintiff alleges that he was subjected to ongoing violations of his constitutional rights and Wisconsin state law during his year-long stay at the Jail. He is proceeding on the following claims: (1) excessive force; (2) denial of access to the courts; (3) retaliation; (4) deliberate indifference to a serious medical need; (5) confinement in segregation without due process; (6) denial of free exercise of religion and violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA); and (7) state law claims.

**B. Criminal Conviction and Appeal**

On June 6, 2010, Attorney Peter Goldberg represented the plaintiff in his criminal case. Attorney Goldberg moved to withdraw on August 12, 2010. At a status of counsel hearing on August 23, 2010, Attorney Lew Wasserman appeared as the plaintiff's

4

attorney of record. On October 25, 2010, the court granted Attorney Wasserman's motion to withdraw as counsel although the plaintiff's jury trial date of November 29, 2010 remained scheduled. On November 5, 2010, Attorney Dianne Erickson appeared on behalf of the plaintiff. The plaintiff's jury trial was rescheduled until January 31, 2011. On January 19, 2011, Attorney Erickson raised the issue of the plaintiff's competency and his ability to proceed with trial. On January 24, 2011, the trial court ordered that the plaintiff be admitted for an inpatient competency evaluation. He was sent to Mendota Mental Health Institute on February 1, 2011, for the evaluation. The court canceled the jury trial set for January 31, 2011 and tolled the time limits as to the speedy jury trial demand.

On February 24, 2011, the plaintiff was deemed competent to proceed and his jury trial was rescheduled for April 4, 2011. The plaintiff moved to have Attorney Erickson removed from the case and to be allowed self-representation but the trial court denied the motions. Instead, the court gave the plaintiff the option of keeping Attorney Erickson as his counsel, or having a new attorney appointed to defend his criminal case. The plaintiff refused to respond to the court's question regarding his choice of counsel and, therefore, it was ordered that Attorney Erickson remain his counsel of record.

The plaintiff's trial proceeded on April 4, 2011. On April 7, 2011, he was convicted of two counts of first degree intentional homicide, with a charge modifier of use of a dangerous weapon on both counts. On June 10, 2011, he was sentenced to two life sentences without the possibility of parole.

5

On May 3, 2011, the Wisconsin Court of Appeals denied the plaintiff's petition for a writ of habeas corpus and the court denied his motion for reconsideration on May 12, 2011. The plaintiff filed a petition for review on June 8, 2011, and on June 15, 2011, he filed his intent to pursue post-conviction relief. Attorney Bradley Lochowicz was appointed as his public defender on July 22, 2011. On September 29, 2011, the Wisconsin Supreme Court denied the plaintiff's previously filed petition for review. On October 7, 2011, the plaintiff filed a pro se motion for reconsideration of the denial of his petition for review, which the court denied on October 11, 2011. On October 17, 2011, the plaintiff filed his notice of appeal and his appellate counsel filed a motion to withdraw as counsel. The plaintiff's appeal asking the supreme court to reconsider its decision on the petition for review was denied on October 19, 2011. After months of legal activity, including numerous motions filed by the plaintiff, the court of appeals and supreme court reviewed and denied all of the plaintiff's accepted post-conviction filings.

**C. Jail: June 4, 2010 through June 15, 2011**

Throughout the plaintiff's one-year stay at the Jail, he incurred approximately eighty-five instances of Jail rules violations. Forty-seven of the violations were "in-pod disciplines" wherein the plaintiff was disciplined with less than twenty-four hours locked in his cell and the discipline did not require a hearing. The plaintiff's remaining thirty-eight infractions are documented in formal disciplines involving disciplinary hearings.

The Department of Corrections ("DOC") regulations that apply to the Jail

regarding disciplines are contained in the Wisconsin Administrative Code, Chapter DOC 350.15. DOC 350 explains the parameters for a minor discipline, which is defined as discipline of twenty-four hours or less. The Jail refers to these as Level I disciplines. The remaining infractions can constitute Level II through Level V infractions, and have certain penalties. Enhanced penalties can apply for repeat violations.

The plaintiff was booked into the Jail on June 4, 2010 and initially housed in pod 6B. On June 6, 2010, he was moved to pod 5D. On June 22, 2010, the plaintiff was moved to pod 4D, which is a disciplinary pod. Inmates are moved to a disciplinary pod when they violate prison rules and/or when the inmates are threats to themselves, staff, or the general security of the Jail.

On June 22, 2010, the plaintiff was written up for violating three prison rules: (1) disobeying verbal or written orders from sworn staff; (2) committing any act that disrupts the orderly operation of the jail; and (3) refusing an order to lock in. (Nyklewicz Aff. ¶ 45, Ex. F.) Two violations from the June 22, 2010 Rules Violation Report were sustained and all three were Level III violations. The plaintiff was given six to eight days in disciplinary housing. The plaintiff avers that he refused to lock in because cell confinement caused him to have a panic attack and he wanted to speak with a social worker about his claustrophobia. (Compl. ¶ 47.)

On June 29, 2010, the plaintiff was moved out of pod 4D and back to the general population pod, pod 5B. From June 29, 2010 through September 22, 2010, he incurred fifteen

7

in-pod rules infractions.

On September 22, 2010, the plaintiff was returned to pod 4D for, (1) disobeying verbal or written orders from sworn staff; (2) committing any act that disrupts the orderly operation of the jail; (3) refusing an order to lock in; and (4) committing any act that requires use of force. (Nyklewicz Aff. ¶ 52, Ex. G.)  According to the plaintiff, he was moved in retaliation for asking to speak to a sergeant about access to court issues and rights violations. (Compl. ¶¶ 49-55.)  The plaintiff does not dispute that he disobeyed orders to lock in.

On October 11, 2010, the plaintiff was moved to pod 4B.  He stayed there until October 18, 2010, when he was moved to pod 5B.  Between September 22, 2010 and October 21, 2010, the plaintiff incurred three additional in-pod disciplines for rules violations.

On October 20, 2010, the plaintiff filed a grievance against Corrections Officer Diggins-Davis and Sergeant Hale regarding the garment size he was provided during the linen exchange. (Nyklewicz Aff. ¶ 99, Ex. T.)  The undergarment issue was corrected in the Jail's system on October 20, 2010 and therefore Sergeant Hale denied the grievance on November 11, 2010. (Nyklewicz Aff. ¶ 100.)

The plaintiff was moved to the disciplinary pod, pod 4D, on October 21, 2010 for committing the following rules violations: (1) use of obscene language to jail staff; (2) committing any act that disrupts the orderly operation of the jail; (3) disobeying verbal or written orders from staff; (4) committing any act that requires use of force; (5) participation in a disturbance requiring a C.E.R.T. team; (6) committing any act, which necessitates a

8

security search; (7) threat to another person; (8) committing any act that disrupts the orderly operation of the jail; and (9) making sexual threats, proposals or gestures. (Nyklewicz Aff. ¶ 56, Ex. H.)  The plaintiff avers that he was moved in retaliation for filing the grievance against Hale, who ordered plaintiff written up and moved under the guise of multiple lock ins. (Compl. ¶¶ 17-23.)  However, the cited evidence shows that the plaintiff did commit the offenses.

On October 30, 2010, the plaintiff was written up for committing the following rules violations: (1) committing any act that disrupts the orderly operation of the jail; (2) disobeying verbal or written orders from sworn staff; and (3) use of obscene language to jail staff. (Nyklewicz Aff. ¶ 57, Ex. I.)  The plaintiff refused to return his lunch bag to Jail staff during meal pass.  He does not deny this although he avers that he was justified because he wanted to show a sergeant that officers tampered with his meals.  (Tatum Aff. ¶ 29.)

The plaintiff was already housed in pod 4D and, therefore, remained in his assigned cell after the issuance of his October 30, 2010 rules violation.  On November 4, 2010, the plaintiff moved out of discipline to pod 4B and on November 11, 2010, he moved to a different cell within the same pod.  From October 22, 2010 to November 27, 2010, the plaintiff incurred ten additional in pod disciplines for rules violations. (Nyklewicz Aff. ¶ 61, Exs. C, D.)

On November 27, 2010, the plaintiff returned to disciplinary pod 4D for, (1) committing any act that disrupts the orderly operation of the jail; (2) disobeying verbal or

9

written orders from sworn staff; and (3) use of obscene language to jail staff. (Nyklewicz Aff. ¶ 62, Ex. J.)

On December 4, 2010, the plaintiff was transferred to pod 4B, but was on discipline status. Pod 4B can be used for discipline overflow in the Jail if it does not have enough room in 4D and for purposes of transitioning inmates back to general population. On January 19, 2011, the plaintiff was moved to a new cell within pod 4B, still on discipline status. Later that day he was moved to pod 4D, then subsequently moved back to the same cell in pod 4B, still on discipline.

On January 20, 2011, the plaintiff was moved to pod 4D for (1) refusing an order to lock in; (2) using obscene language to jail staff; (3) any act that disrupts the orderly operation of the jail; (4) failure to comply with classification procedures; and (5) disobeying written or verbal orders from staff. (Nyklewicz Aff. ¶ 66, Ex. K.) The plaintiff asserts that he was transferred to 4D as part of a retaliatory plot. However, he acknowledges that he refused an order to lock in his cell. (Compl. ¶¶ 60-67; Tatum Aff. ¶ 21.)

On January 27, 2011, the plaintiff was written up for (1) committing any act that necessitates a security search; (2) committing any act that disrupts the orderly operation of the jail; (3) disobeying verbal or written orders from sworn staff; and (4) defacing county property. (Nyklewicz Aff. ¶ 67, Ex. L.) The plaintiff addresses part of this proposed fact. He asserts that he did have empty apple juice and milk cartons in his cell but that it should not have been an offense because staff had not picked up the lunch meal yet. (Compl. ¶¶ 69-73.)

10

On February 1, 2011, the plaintiff was assigned to pod 4D, but was "IBO"—"in-but-out" as the plaintiff was sent to Mendota Mental Health Institute for a competency evaluation. On February 17, 2011, the plaintiff returned from Mendota and was returned to the disciplinary pod because of his behavior patterns. He was considered a threat to Jail security because of his numerous discipline violations.

On February 18, 2011, the plaintiff was sent to the special needs pod on the second floor and placed in a restraint bed for committing the following acts: (1) flooding causing leakage to cells, walls or floors; (2) intentionally damaging jail security or safety of property; (3) tampering with any permanent building fixture; (4) committing any act that disrupts the orderly operation of the jail; (5) disobeying verbal or written orders from officers; and (6) defacing county property while housed in 4D. (Nyklewicz Aff. ¶ 70, Ex. M.) The plaintiff denies that he activated the sprinkler and asserts that it must have malfunctioned. (Compl. ¶¶ 79-92.)

The plaintiff was placed on the restraint bed on February 18, 2011 due to his behavior in tampering with the sprinkler. After the Jail gained control of the plaintiff, he was returned to pod 4D later in the day. During the plaintiff's disciplinary hearing on the February 18, 2011 rules violations, Captain Elliott listened to the plaintiff's side of the story in sustaining the charges against him. The plaintiff avers that he did not tamper with the sprinkler and that he was not "out of control." (Tatum Aff. ¶ 31.)

On March 11, 2011, the plaintiff was written up for, (1) committing any act

11

which necessitates a security search by staff; (2) committing any act that disrupts the orderly operation of the jail; and (3) disobeying verbal or written orders from officers. (Nyklewicz Aff. ¶ 74, Ex. N.)  He was already in disciplinary housing; therefore, he remained in his assigned cell after the issuance of the rules violations.   The plaintiff met with a psychiatric social worker  on March 11, 2011 because he said he had suicidal thoughts.  After the social worker met with the plaintiff, he was placed on suicide watch.  The plaintiff does not deny the allegations but he asserts that he was written up for going on suicide watch.  According to the plaintiff, he stated that he had suicidal thoughts to get a sergeant to respond, not because he really had suicidal thoughts.  (Compl. ¶ 112.)

On March 21, 2011, the plaintiff remained in pod 4D, but was put on maximum custody status due to his numerous rules violations and behavior problems.  Inmates are placed on maximum custody status when they are deemed a threat to themselves, staff, or to the general security of the Jail.  Jail staff considered the plaintiff an active threat to himself, staff, and other inmates at that time.  While on maximum custody status, an inmate's status is reviewed every thirty days. (Nyklewicz Aff. ¶ 80.)  The plaintiff avers that he never received any "of these sham reviews" from March 31, 2011 until he left the Jail.  (Tatum Aff. ¶ 33.)

On March 22, 2011, while still housed in 4D, the plaintiff was written up for the following: (1) use of obscene language to jail staff; (2) disobeying verbal or written orders from staff; (3) committing any act that disrupts the orderly operation of the jail; and (4) refusing an order to lock in. (Nyklewicz Aff. ¶ 81, Ex. O.)  The plaintiff asserts that he was

12

being harassed, as officers intentionally misprogrammed his phone information under the wrong pin number so he could not call his lawyer or family. (Tatum Aff. ¶ 9; Compl. ¶¶ 121-129.)

On March 22, 2011, Sergeant Liebenthal was working on second shift. At approximately 1613 hours, he reported to pod 4D, sub pod A, to address a disturbance caused by the plaintiff. After the plaintiff was locked in his cell, he informed Sergeant Liebenthal that he attempted to call his attorney during his time out of his cell on second shift, but his telephone numbers "had been removed from the system." (Liebenthal Aff. ¶ 6.) After speaking with the plaintiff, Sergeant Liebenthal ran a report in the Jail's telephone system (Digital Call Manager) for all calls attempted or made in sub pod A of pod 4D during second shift that day. The Digital Call Manager report revealed that zero calls had been made or even attempted from the telephone located in sub pod A of pod 4D.

After the report was completed, Sergeant Liebenthal performed a search of the plaintiff's approved personal telephone numbers entered in the Digital Call Manager System. The search confirmed that as of March 7, 2011 at 6:11 p.m., the plaintiff had 414-278-7776 programmed into the Digital Call Manager System, which belonged to his then criminal defense attorney, Attorney Dianne Erickson, and as of March 22, 2011 at 3:46 a.m., the plaintiff had 414-873-0130 programmed into the Digital Call Manager System, which was the telephone number of his mother, Linda Mohammed. (Liebenthal Aff. ¶ 9.) Sergeant Liebenthal believed that on March 22, 2011, the plaintiff was attempting to circumvent the

13

inmate telephone system by claiming to have unsuccessfully attempted to use the telephone located in his pod so they he would be granted a "free" telephone call on the telephone located inside the counseling room.[3] (Liebenthal Aff. ¶ 12.) The disciplinary hearing for the March 22, 2011 incident took place on March 28, 2011. Lieutenant Carlson reviewed all the relevant reports and sustained all rules violations.

On March 30, 2011, while still housed in pod 4D, the plaintiff committed the following rules violations: (1) committing any act which necessitates a security search; (2) violation of telephone or mail regulations; (3) committing any act that disrupts the orderly operation of the jail; (4) disobeying verbal or written orders from sworn staff; (5) defacing county property; and (6) use of obscene language to jail staff. (Nyklewicz Aff. ¶ 84, Ex. P.) The rules violation report of the March 30, 2011 incident indicates that during a search of the plaintiff's cell, several small pieces of elastic that were torn from his uniform were found tied into a knot, approximately twenty-four inches of elastic was found in an envelope, and the plaintiff had covered his vent. (Nyklewicz Aff. ¶ 85.) The plaintiff asserts that the charge was frivolous and absurd. (Tatum Aff ¶ 34; Compl. ¶ 131.)

From November 27, 2010 through March 30, 2011, the plaintiff incurred seventeen additional instances of in-pod disciplines. On April 7, 2011, he was moved to the special needs pod. An inmate is placed in a special needs pod when he requires special monitoring because he displays behavior that indicates he should not be housed in general

---

[3] The plaintiff opines that the numbers were purposely programmed incorrectly under a different pin number which prevented him from using the phone. (Tatum Aff. ¶ 9.)

14

population.

On April 19, 2011, while still housed in special needs, the plaintiff committed the following rules violations: (1) committing an act that results in a use of force; (2) failure to comply with classification procedures; (3) violation of phone or mail regulations; (4) disrupting orderly operation of the jail; and (5) disobeying verbal or written orders from staff. (Nyklewicz Aff. ¶ 89, Ex. Q.) The plaintiff asserts that he was at his wits end with daily harassment and retaliation, and that he made a three-way crisis call to 911 to obtain restraining orders against Jail staff. (Compl. ¶¶ 134-43.)

The plaintiff remained in special needs on April 19, 2011, but was placed on maximum custody status again due to his previous behavior issues and rules infractions. On April 20, 2011, he remained on special needs so he could be better monitored by staff because of his past history and for the security of the Jail.

On May 3, 2011, the plaintiff committed the following rules violations: (1) committing any act which necessitates a security search; (2) tampering with any permanent building fixture; (3) threat to another person; (4) committing any act that disrupts the orderly operation of the jail; (5) disobeying verbal or written orders from sworn staff; and (6) use of obscene language to jail staff. (Nyklewicz Aff. ¶ 93, Ex. R.) The plaintiff does not deny the offense of covering his window with toilet paper but asserts he did it because the officer did not give him his legal mail. (Compl. ¶¶ 146-50.)

The plaintiff changed cells after the occurrence of the May 3, 2011 rules

15

violations, but was still on disciplinary status within the special needs pod. On May 5, 2011, the plaintiff moved sub pods within the special needs pod, but remained on disciplinary status. On May 24, 2011, the plaintiff's status was changed to maximum custody status, but he remained in the special needs pod for the security of the Jail.

On May 25, 2011, the plaintiff was moved to disciplinary status for (1) violation of telephone or mail regulations; (2) committing any act that disrupts the orderly operation of the jail; (3) disobeying verbal or written orders from staff; and (4) threats to another person. (Nyklewicz Aff. ¶ 97, Ex. S.) He remained on disciplinary status until he was sent to Columbia Correctional Institution on June 15, 2011.

## ANALYSIS

### A. Denial of Access to the Courts

The plaintiff sets forth four access to the courts violations: (1) he was prevented from filing an interlocutory appeal in his criminal case because his August 12, 2010 law library requests to defendants Davis and Carlson went unanswered; (2) Sergenat Liebenthal prevented him from reaching Attorney Ericksen to discuss trial strategy, based on the Jail's faulty telephone system; (3) Officer McKnight confiscated the plaintiff's legal book on self-representation which led to the trial court denying his request to proceed pro se in his criminal case; and (4) Detectives Lorch and Gottschalk filed false reports regarding the October 21, 2010 excessive force incident which hindered the plaintiff's non-frivolous criminal battery charges against the officers.

16

To state a denial-of-access claim, the plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions[.]" *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); accord *Guajardo-Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010). This requires him to identify the underlying claim that was lost. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007).

As an initial matter, the plaintiff had legal counsel during his criminal trial and direct appeal, except for an eleven-day period (August 12 through August 23, 2010) between when the trial court granted Attorney Goldberg's motion to withdraw and when Attorney Wasserman appeared as counsel, and another eleven-day period (October 25 through November 5, 2010) between when the court granted Attorney Wasserman's motion to withdraw and when Attorney Erickson appeared on behalf of the plaintiff. Access to legal materials is required only for unrepresented litigants. *See Campbell v. Clarke*, 481 F.3d 967, 968 (7th Cir. 2007) (citing *Bounds v. Smith*, 430 U.S. 817, 830-32 (1977)). The plaintiff has not presented evidence that he was prevented from litigating a non-frivolous claim during the brief durations that he was unrepresented.

In addition, with regard to the plaintiff's claim that he was unable to call his attorney on March 22, 2011, the evidence establishes that his attorney's number was programmed into the system despite the plaintiff's assertions to the contrary. Finally, the

17

plaintiff's contention that he was prevented from filing a criminal case against officers based on their use of excessive force against him is misplaced because, as a private citizen, he may not initiate criminal charges.. *See* Wis. Stat. 968.02 (West); *Kalal v. Circuit Court for Dane Cnty.*, 681 N.W.2d 110, 114 (Wis. 2004).

A reasonable fact-finder could not conclude that the plaintiff was denied access to the courts. Therefore, the defendants' motion for summary judgment as to the plaintiff's access to the courts claims will be granted.

## B. Retaliation

The plaintiff contends that all of the defendants' actions in this case were retaliatory. He sums up his retaliation conspiracy claim as follows:

> Pl[aintiff] alleges ALL defendants retaliated against him with his seeking religious accommodation as the motivating factor (giving joinder)[.] Their individual acts, as the complaint & evidence will show, added up to a year long tirade of continuous abuse & harassment against pl[aintiff], with the sheer number of allegations, the temporal proximity of events, that def[endants] acted outside of normal procedures as stated by [Jail] written policies to particularly punish pl[aintiff], and def[endants'] direct targeting of pl[aintiff] & his religion with hate & abusive speech showing motive to retaliated for religious cause, all serve as compelling direct & circumstantial evidence to prove a retaliatory conspiracy effected against pl[aintiff]. Def[endants] acted in consort [sic], using email & other modes of communication to recruit participants, spread information regarding the retaliatory measures being taken against pl[aitniff], to slander pl[aintiff], to negatively affect his then pending state case by willful obstruction; and communication was sent to the entire conspiring case that the mission to negatively influence the case was accomplished on 4-7-11, that case including Clarke.

18

(Pl.'s Resp. Br. at 5.)

To establish a prima facie case of retaliation, an inmate must produce evidence that (1) he engaged in constitutionally protected speech, (2) he suffered a deprivation likely to deter protected speech; and (3) his protected speech was a motivating factor in the defendants' actions. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012) (clarifying allocation of evidentiary burdens at summary judgment in light of *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)); *Greene v. Doruff*, 660 F.3d 975, 977 (7th Cir. 2011) (same). If the inmate satisfies these elements, the burden shifts to the defendants to rebut the causal inference with evidence showing that they would have taken the same action even without any retaliatory motive. *See Kidwell*, 679 F.3d at 965; *Greene*, 660 F.3d at 979.

As an initial matter, the plaintiff's claim that he was the subject of a year-long retaliatory conspiracy for seeking religious accommodations cannot withstand summary judgment. The plaintiff claims that every alleged deprivation and abuse that he suffered at the Jail stemmed from a plot to retaliate against him for his attempts to freely exercise his religion. He alleges that he made a religious dietary request immediately after he arrived at the Jail and that some defendants made derogatory remarks about his religion. However, these allegations do not establish a year-long retaliatory conspiracy.

Moreover, to the extent that the plaintiff claims his disciplinary violations were retaliatory, the record shows that although the plaintiff "disputes" the behavior for which he was disciplined and thereby asserts that the violations must have been retaliatory, he goes on

19

to justify the very behavior for which he was disciplined and/or argues why the rules are invalid. For example, the plaintiff alleges that on June 22, 2010, he refused the order to lock in because he was having a panic attack and wanted to speak with a social worker. He does not dispute that he disobeyed orders to lock in on September 22, 2010. The plaintiff acknowledges that he refused an order to lock in his cell on January 20, 2011. He asserts that the March 30, 2011 charges against him were frivolous and absurd. The plaintiff acknowledges placing a three-way crisis call to 911 on April 19, 2011. He also does not deny that he covered his cell window with toilet paper on May 3, 2011. The plaintiff's retaliation claims therefore fail. *See Kidwell*, 679 F.3d at 965.

Finally, the plaintiff alleges that on October 21, 2010, he was moved to pod 4D in retaliation for submitting an inmate grievance based on receiving the wrong size of underwear. However, an examination of the complaint allegations reveals that the plaintiff admits to violating at least one of the alleged violations that prompted the move. *See* Compl. ¶¶ 23-27. Moreover, his assertion that the move to pod 4D was retaliatory is conclusory. The plaintiff wrote the grievance against Officer David and Sergeant Hale the morning of October 20, 2010. He alleges that that night at 9:00 p.m., Officers Henderson and Leeman approached the plaintiff's cell and informed him he was being moved to pod 4D. There is no indication that Henderson and Leeman were aware of the grievance the plaintiff filed that morning against two other individuals. For these reasons, the plaintiff's retaliation claims will be dismissed.

20

## C. Remaining Claims

The defendants' proposed facts describe activities related to the plaintiff's criminal case, his movement within the Jail, one inmate complaint he filed, and the multiple Jail rules he was found to have violated. These facts permit the court to determine that the defendants are entitled to summary judgment on the plaintiff's access to the courts and retaliation claims as set forth above.

However, the defendants' facts do not address the plaintiff's remaining claims. The defendants submit a 62-page brief in which they argue that they are entitled to summary judgment because the plaintiff cannot show his rights were violated. But that argument is premature because the defendants did not first meet their burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(a).

The complaint is dense and sets forth eleven types of claims against more than thirty defendants. It is evident that the defendants put forth significant effort in ascertaining and setting forth the claims from the complaint. However, as indicated, their arguments are not supported by facts. Accordingly, the court will deny summary judgment as to the plaintiff's remaining due process, excessive force, medical care, religion, and state law claims.

Under the circumstances, the defendants should advise the court within ten days of the date of this order whether they will seek leave to file a successive motion for summary judgment.

21

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (Docket #160) is **granted in part and denied in part** as described herein. The plaintiff's access to the courts and retaliation claims are dismissed.

**IT IS FURTHER ORDERED** that the defendants advise the court within ten days of the date of this order whether they will seek leave to file a successive motion for summary judgment.

Dated at Milwaukee, Wisconsin, this 5th day of September, 2013.

**SO ORDERED,**

_____

**HON. RUDOLPH T. RANDA**
**U. S. District Judge**