UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**ROBERT L. TATUM,**

        Plaintiff,

   -vs-                                                          Case No. 11-C-1131

**DAVID A. CLARKE, JR., KEVIN NYKLEWICZ,
PETER JASKULSKI, MELISSA ELLIOT,
ABIE DOUGLAS, TRICIA CARLSON,
FATRENA HALE, SARAH WRONSKI,
THOMAS TRETTIN, THOMAS LIEBENTHAL,
GARY COLEMAN, BRET MYERS,
TIMOTHY LORCH, MITCHELL GOTTSCHALK,
PATRICK DIGGINS-DAVIS, DENNIS MCKNIGHT,
JUSTIN GEORGESON, CHARLES HOLT,
EDWARD HORZEWSKI, JAMES KOSCIELAK,
CHERI SCHMITZ, originally sued as "SHERI SCHMITZ,"
TINA WATTS,
CHRIS BECKER, formerly known as "CHRIS LUBUS,"
MATT LEETE, KIRK LAUSTERER,
JAMES NOVOTNY, originally sued as "JOHN NOVOTHY,"
LEON WOODS, originally sued as "JOHN WOODS"
DENISE LUNA, originally sued as "JANE LUNA,"
SEAN HENDERSON, MICHAEL LEEMAN,
DESHAWN MCKINLEY,
CALVIN SMITH, originally sued as CERT team leader Tim "Doe," and
DECORIE SMITH, originally identified as "JOHN" D. SMITH,**

        Defendants.

## DECISION AND ORDER

### Production of Witnesses

Plaintiff Robert Tatum ("Tatum") filed a motion (ECF No. 332)

requesting that the United States Marshal be directed to serve subpoenas upon 12 individuals whom he wants to testify at the jury trial, and writs of habeas corpus ad testificandum for himself and four Wisconsin prison inmates whom he also wants to testify at trial. By an October 14, 2015, Decision and Order (ECF No. 357), the Court found that Tatum had not made a particularized showing in order to obtain the attendance of witnesses by means of Court-facilitated service, and it gave Tatum an opportunity to supplement his request and for the Defendants to respond.

Tatum filed supplements to his motion (ECF Nos. 362, 363, 363-1), adding a request for issuance of a subpoena for the testimony of Amiee Bailey, R.N., who recorded several of his weights in his medical file, and he states that "she is thereby in add. to being RN relevant to med. claims + religious diet claims, and likely punitive damages." (ECF No. 362.) The Defendants filed a response (ECF No. 364) contending that Tatum has not complied with the Order and requesting that his motion be denied; although they indicate that Defendant Sheriff David A. Clarke, Jr. will be available to testify at trial. Subsequently, the Court allowed additional time for Tatum to supplement his motion and for the Defendants to reply thereto (ECF No. 371); supplemental filings followed (ECF Nos. 372, 376). The Court also re-rescheduled the jury trial of this matter to begin on May

9, 2016.

In his October 30, supplement Tatum cites *Wolff v. McDonnell,* 418 U.S. 539, 566 (1974), which states:

> We are also of the opinion that the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution. We should not be too ready to exercise oversight and put aside the judgment of prison administrators. It may be that an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required.

He also relies on *Ponte v. Real,* 471 U.S. 491, 497 (1985), which addressed whether due process requires that a disciplinary board explain, at the hearing or later, why witnesses were not allowed to testify. The Supreme Court held:

> We think the answer to that question is that prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify, but that they may do so either by making the explanation a part of the "administrative record" in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a "liberty" interest is challenged because of that claimed defect in the

- 3 -

> hearing. In other words, the prison officials may choose to explain their decision at the hearing, or they may choose to explain it "later." Explaining the decision at the hearing will of course not immunize prison officials from a subsequent court challenge to their decision, but so long as the reasons are logically related to preventing undue hazards to "institutional safety or correctional goals," the explanation should meet the due process requirements as outlined in *Wolff*.

Unlike *Wolff* and *Ponte,* this proceeding is not in a prison, nor does it involve the imposition of any discipline upon Tatum.

In the civil trial context, Tatum's request for inmate witnesses involves a balancing between affording Tatum an opportunity to fully present his case and the costs of transporting and housing prisoners—as well as the security concerns they present. The Court's protocol is designed to insure that the inmate witnesses are willing to testify and have knowledge of facts that are relevant to Tatum's claims.

Tatum's supplements do not report the current willingness of any incarcerated witness to testify, although he states that at "one stage or another all inmate witnesses agreed to testify in the case" (ECF No. 372, at 2). He also supplements the information he provided previously. His assertion that his former jail cellmate, inmate Dwayne Thomas, will corroborate his testimony regarding his religious rights and diet claims is reasonable and would be relevant especially because Tatum anticipates

- 4 -

that the Defendants will attempt to claim that he did not adhere to his religious diet.

Tatum also intends to call inmate Maurice Collins to corroborate his religious rights and diet claims and the injuries that Tatum allegedly sustained in an October 21, 2010, incident involving excessive force and the failure to protect him from that force by Defendants Justin Georgeson, Fatrena Hale, Sean Henderson, Michael Leeman, Dennis McKnight and Sarah Wronski. Alleged injuries incurred by Tatum as a result of that incident are the basis for Tatum's deliberate indifference to serious medical needs claim against Defendant Tina Watts.

Tatum also states that Collins is familiar with the Milwaukee County Jail's pod 4-D disciplinary policies. Collins' proposed testimony would be relevant and would corroborate Tatum's testimony. Tatum also provides greater specificity with respect to Michael Roman, whom he intends to call to support his official capacity and widespread policy claims based on Roman's experience with excessive force on October 20, 2010, and disciplinary policies in pod 4-D. Tatum also intends to call Germel Lindsey to provide testimony regarding his denial of due process, religious rights/diet, and punitive damages claims.

As indicated at the final pretrial conference, court staff will contact

those individuals to determine whether they remember Tatum and the situations he intends to have them testify about, and to ascertain whether they would be willing to testify at his civil trial. The Court was waiting to make the inquiries until the scheduling of a new trial date. Given that the trial will not begin until May 9, 2016, the Court will have its staff contact the proposed inmate witnesses in early March.

With the exception of Tatum's mother, Linda Muhammad, whom he believes is willing to testify, Tatum is not sure of the willingness of unincarcerated witnesses to testify. Although Tatum attempted to contact them regarding their willingness to testify, the only response he has received was an intake sheet from the ACLU. Tatum also states their willingness to appear voluntarily is irrelevant because the subpoena is a document that can be shown to an employer and fees would encourage the witnesses to appear.

As to Muhammad, Tatum states that she will testify regarding all issues in this case and to corroborate his testimony. As to Sheriff's Department Detective Donald DeSotell, who investigated the October 20, 2010, placement of Roman in restraints and cuffs, Tatum intends to call him to establish the official capacity excessive force claims and to impeach the credibility of some Defendants who lied to cover up others' involvement

in the Roman incident.

Tatum states that Attorney Peter Koneazny is necessary to prove customs related to Tatum's medical care claims, religious diet claims, excessive force claims, punitive damage claims, and to authenticate the Aramark nutraloaf exhibit.

With respect to nurses Florentino Franco-Sanchez, R.N., Fredrick Porlucas, R.N., Deborah Cales, R.N., Ann Knoll, R.N., Carolyn Exum, R.N., Margie Burton R.N., Elysia Scanning, R.N., Russell Mewhorter, R.N., and Amiee Bailey, R.N. (seven of whom were formerly identified as unknown RNs in the Complaint), Tatum intends to call them to testify in both their individual and official capacities as to the medical care claims and to establish widespread multiple defendant involvement in those claims.

Tatum has stated a reasonable non-cumulative basis for calling each of the witnesses, and for compelling the witness to testify at trial. Therefore, with the exception of Clarke whom the Defendants will produce, Tatum's motion as to unincarcerated witnesses is granted. The witness subpoenas will be provided to the United States Marshal 45 days prior to trial.

**Motions for Contempt and Direction that Action be Filed**

Tatum filed a motion (ECF No. 374) for initiation of a contempt

proceeding pursuant to 18 U.S.C. § 401 against Catherine Broadbent for her failure to file double-sided documents, relying upon the Court's October 27 Order (ECF No. 371). He seeks sanctions of $25.00 for each day of non-compliance. The double-sided document at issue includes a civil action cover sheet, a Complaint under 42 U.S.C. § 1983, and a petition and affidavit to proceed without prepayment of fees and costs. Tatum also filed an expedited motion directing the Clerk of Court to file the documents as a new action. (ECF No. 379.)

> Section 401 states:
>
> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as--(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; (2) Misbehavior of any of its officers in their official transactions; (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401. This alleged contempt involves non-party Broadbent's out-of-court conduct, and would require notice to Boardbent and a request that the government prosecute the contempt. *See Trade Well Int'l v. United Cent. Bank*, 778 F.3d 620, 626 (7th Cir. 2015). Furthermore, if construed as civil contempt, a district court "must be able to point to a decree from the court which sets forth in specific detail an unequivocal command which the party in contempt violated." *Id.*

- 8 -

> The Court's October 27, 2015, Order, states:
>
> > Repeated issues have arisen regarding Tatum's non-compliance with the one-side-only requirement of his hand written e-filings. (See ECF No. 334.) Compliance with the one-written-side-only requirement for Tatum's filings is in his interest because it reduces problems with the scanning process and produces the most legible version of his documents. Tatum is strongly encouraged to write only on one side of each sheet of paper. *However, to avoid further collateral issues in this action, the Court will make an exception and allow Tatum to file double-sided documents.*

(ECF No. 371, at 2-3.) (Emphasis added). The Order was limited to this action. Broadbent did not violate this Court's Order. Therefore, Tatum's motion for contempt is denied.

Tatum's contempt motion also points out that Fed. R. Civ. P. 5(d)(4) states "[t]he clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice." Fed. R. Civ. P. 5(d)(4). *See Farley v. Koepp,* 788 F.3d 681, 683 (7th Cir. 2015). The protections of Rules 5(d)(4) and 83(a)(2) apply to e-filing regimes. *See Farzana K. v. Ind. Dep't of Educ.,* 473 F.3d 703, 708 (7th Cir. 2007) ("An e-filing system . . . must accept every document tendered for filing; it cannot reject any paper that the clerk must accept."). Therefore, Tatum's motion for the filing of a new action is granted and the Clerk of Court is directed to open a new civil action with the exhibits one through four of the Tatum

- 9 -

affidavit (ECF No. 375-1), and to process that case as it does all prisoner cases.

**Motion for Reconsideration of Rulings on Motions in Limine**

Tatum seeks reconsideration (ECF No. 382) of seven October 22 rulings on motions in limine (ECF No. 368) asserting that they were based on misunderstandings of the parties' positions, disregard of relevant law or fact, and manifest error. He also address the Defendants' ex parte request for additional time to file their pretrial report—a matter discussed with respect to the October 22 ruling on Tatum's motion for sanctions.

Having considered all Tatum's contentions including those addressing rulings on evidence of inflammatory Nation of Islam beliefs, Defendant David Clarke Jr.'s liability for the Milwaukee County Jail customs and policies, issue preclusion regarding Tatum's due process claims relating to a detainee's witnesses at Jail disciplinary hearings and denial of hearings for minor infractions, prior settlements and RLUIPA individual capacity damages, Tatum has not established any manifest errors of law or fact. *See Oto v. Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000).

Furthermore, the ex parte contact was improper. The Court has attempted to assure it will not be repeated. And, the case will proceed

without further attention to that incident.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Tatum's motion for attendance with respect to unincarcerated witnesses (ECF No. 332) is **GRANTED** except as to Clarke. The remainder of the motion with respect to incarcerated witnesses will be held in abeyance until those persons can be contacted;

Tatum's motion for contempt (ECF No. 374) is **DENIED**;

Tatum's expedited motion for an order directing the Clerk of Court to open a new case (ECF No. 379) is **GRANTED**;

The Clerk of Court is **DIRECTED TO OPEN** a new civil action with ECF No. 375-1 and to process that case as it does all prisoner cases; and

Tatum's motion for reconsideration (ECF No. 382) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 1st day of December, 2015.

**BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA
U.S. District Judge**